# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
September 1, 2011 Session at Knoxville

## MICHAEL LIND v. BEAMAN DODGE, INC., d/b/a BEAMAN DODGE CHRYSLER JEEP ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Rutherford County**
**No. 59485      Royce Taylor, Judge**

---

**No. M2010-01680-SC-S09-CV - Filed December 15, 2011**

---

The plaintiff, who had purchased a truck from an automobile dealership, filed a products liability suit in 2007 against not only the manufacturer, but also the dealership, as seller. Later, the plaintiff entered a voluntary nonsuit as to the seller and proceeded only against the manufacturer. Over one year after the order granting nonsuit, the manufacturer declared bankruptcy, and, in 2009, the plaintiff again sued the seller, alleging both negligence and strict liability in tort. The seller filed a motion to dismiss, contending that the suit was barred by the statute of limitations. The trial court denied the motion but granted an interlocutory appeal. The Court of Appeals denied the appeal. This Court granted the seller's application for permission to appeal to consider the application of the saving statute to these unique circumstances. We hold that the plaintiff may proceed under the strict liability claim because that cause of action did not accrue until the manufacturer was judicially declared insolvent. Because, however, the second suit alleged acts of negligence on the part of the seller, an exception to the statutory rule prohibiting products liability suits against sellers, and could have been brought in 2007, the statute of limitations is a bar to recovery under that theory. The judgment of the trial court is, therefore, affirmed in part and reversed in part, and the cause is remanded for trial.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Trial Court is Reversed In Part and Affirmed In Part**

GARY R. WADE, J., delivered the opinion of the Court, in which JANICE M. HOLDER and SHARON G. LEE, JJ., joined. CORNELIA A. CLARK, C.J., filed a separate opinion concurring in the judgment, in which WILLIAM C. KOCH, JR., J., joined.

J. Britt Phillips and Joy B. Day, Franklin, Tennessee, for the appellant, Beaman Dodge, Inc.

Mark P. Chalos, Nashville, Tennessee, for the appellee, Michael Lind.

**OPINION**

On March 28, 2006, Michael Lind (the "Plaintiff") was injured as he stepped out of his 2004 Dodge Ram 2500 truck onto Fox Hollow Road in Christiana, Tennessee, near its intersection with Manchester Highway. Almost a year later, on March 19, 2007, he filed suit against the truck's manufacturer, DaimlerChrysler Corporation ("Chrysler"),[1] and the seller, Beaman Dodge, Inc., d/b/a Beaman Dodge Chrysler Jeep (the "Defendant"). The Plaintiff alleged that when he stopped his truck on a flat surface and placed it in park in order to get a closer look at what appeared to be a snake in the roadway, the truck, with the engine still engaged, "self-shifted" into reverse, running over his left foot and arm, breaking his arm and wrist, tearing a rotator cuff, and damaging muscles and ligaments in the arm. The Plaintiff alleged that his truck had "consistently experienced problems with [its] parking system, and that he had taken the vehicle for service on several occasions and the problem was not corrected." In his complaint, the Plaintiff alleged a strict liability claim, contending that the truck was "defective or unreasonably dangerous in that it failed to properly secure in the 'park' position, and the alarm indicating danger did not properly function." He also asserted a negligence-based claim, pointing out that shortly after his accident, he had received a "recall notice" from Chrysler regarding the problems with the "out-of-park" alarm system, and, in consequence, asserted that both Chrysler and the Defendant, a car dealership in Nashville, "knew" or in "the exercise of reasonable care should have known" that the vehicle was "defective or unreasonably dangerous." The Plaintiff further alleged that the negligence of Chrysler and the Defendant proximately caused the accident. Chrysler, which answered the complaint in the name of DaimlerChrysler Company LLC, denied liability, relying upon the standards outlined in the Tennessee Products Liability Act of 1978 (the "TPLA"), Tenn. Code Ann. §§ 29-28-101 to -108 (2000), and pled other defenses to the claim. The Defendant also responded to the complaint,[2] denying liability and specifically invoking the protections provided sellers as set out in Tennessee Code Annotated section 29-28-106, a part of the TPLA:

> (a) <u>No "product liability action," as defined in § 29-28-102(6), shall be commenced or maintained against any seller when the product is acquired and sold by the seller . . . under circumstances in which the seller is afforded no</u>

---

[1] This initial suit is case number 55121 in the Rutherford County Circuit Court.

[2] The record demonstrates that counsel for the Defendant at the time of the answer sent a letter to then-counsel for the Plaintiff, asserting that the Defendant "was not on notice of any problem with the parking system until well after the recall notice" and that "repair records do not show any record of [the Plaintiff] requesting any repair of the parking system."

reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition. The provisions of the first sentence of this subsection shall not apply to:

(1) Actions based upon a breach of warranty, express or implied, as defined by title 47, chapter 2; or

(2) Actions where the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee and where service cannot be secured by the long-arm statutes of Tennessee; or

(3) Actions where the manufacturer has been judicially declared insolvent.

(b) No "product liability action," as defined in § 29-28-102(6), when based on the doctrine of strict liability in tort, shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless the seller is also the manufacturer of the product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.[3]

---

[3] The definitions provided by the TPLA include the following:

. . . .

(2) "Defective condition" means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption;

. . . .

(4) "Manufacturer" means the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts;

(5) "Product" means any tangible object or goods produced;

(6) "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning,

(continued...)

Tenn. Code Ann. § 29-28-106(a)–(b) (emphasis added).

The Plaintiff entered a voluntary nonsuit as to the Defendant on December 21, 2007, pursuant to Rule 41 of the Tennessee Rules of Civil Procedure, but continued the litigation against Chrysler. When, however, Chrysler filed a voluntary bankruptcy petition on April 30, 2009, in the United States Bankruptcy Court for the Southern District of New York, an automatic stay issued in accordance with section 362 of the Bankruptcy Code.[4] See generally 11 U.S.C.A. § 362 (West 2004).

On August 17, 2009, the Plaintiff, represented by new counsel, again filed suit against the Defendant based upon strict liability and negligence.[5] In Count One of the complaint, the Plaintiff alleged that Chrysler had been judicially declared insolvent, asserting the Defendant's liability under both Tennessee Code Annotated section 29-28-106(a)(3) and (b). In Count One, he claimed that the truck sold to him by the Defendant was "defective and/or unreasonably dangerous" both "in design or formation" and "due to inadequate warnings"

---

[3](...continued)
instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever;

(7) "Seller" includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption. "Seller" also includes a lessor or bailor engaged in the business of leasing or bailment of a product; and

(8) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102.

[4] On June 1, 2009, the Bankruptcy Court authorized the sale of Chrysler's assets to New CarCo Acquisition LLC. On August 5, 2009, the Second Circuit Court of Appeals affirmed. In re Chrysler, LLC, 576 F.3d 108 (2d Cir. 2009), vacated as moot, 592 F.3d 370 (2d Cir. 2010). Chrysler's insolvency is not at issue.

[5] This case is number 59485 in the Rutherford County Circuit Court.

-4-

regarding the "park-to-reverse defect,"[6] which the Plaintiff contended involved a delay in the engagement of the reverse gear, subjecting a driver who exits the vehicle with the engine in operation to sudden and unexpected backward movement. In Count Two, the Plaintiff alleged negligence, claiming that the Defendant failed to exercise ordinary care in the inspection, marketing, advertising, and sale of Dodge Ram trucks by continuing to sell them even though the Defendant "knew or should have known that [they] contained the unreasonably dangerous park-to-reverse defect and w[ere] defective." In response, the Defendant filed a motion to dismiss, arguing that the suit, filed more than one year after the voluntary nonsuit to the March 19, 2007 complaint, was time-barred by the applicable rule.

While denying the Defendant's motion to dismiss on the basis that "the limitation period . . . did not begin to run until the manufacturer was adjudicated bankrupt," the trial court granted the Defendant's application for an interlocutory appeal because it determined that appellate review would "prevent needless, expensive and protracted litigation." Tenn. R. App. P. 9(a)(2). The Court of Appeals denied interlocutory review. Because the question of whether the one-year saving statute under Tennessee Code Annotated section 28-1-105 applies under these circumstances is one of first impression, this Court granted the Defendant's application for permission to appeal.

**Scope of Review and Statutory Construction**

The scope of review after the grant or denial of a motion to dismiss involves a question of law. See Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 696-97 (Tenn. 2002). A motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure seeks only to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. See Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). The motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. Id.; see also Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997). In considering a

---

[6] The National Highway Traffic Safety Administration's Vehicle Research and Test Center (the "VRTC") is a federal research facility which conducts the testing of vehicles in an effort to improve highway safety. See Vehicle Research & Testing (VRTC), http://www.nhtsa.gov/VRTC (last visited Sept. 28, 2011). The Plaintiff alleged that the VRTC safety notice to the owners of 2003-2005 Dodge Ram pick-up trucks indicated that "[t]esting showed that the shift lever could be placed at numerous points between gated reverse and gated park that allowed [unexpected rearward movement] to occur between 10 and 30 seconds after releasing the shift lever." U.S. Dept. of Transp., Nat'l Highway Traffic Safety Admin., VRTC - DCD5084 (EA04-025), Unintended Powered Roll-Away in Reverse After Parking – Dodge Ram Pickup Trucks, available at http://www-odi.nhtsa.dot.gov/cars/problems/recalls/results.cfm. (2005). The solution to this problem was to install an "out of park" alarm, which sounded the theft deterrent system if an operator attempted to exit the vehicle with the engine in operation.

-5-

motion to dismiss, the Court is required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the plaintiff. Stein, 945 S.W.2d at 716; see also Webb, 346 S.W.3d at 426 (observing that "Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court" (citation omitted)). Additionally, this Court's review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. Frye v. Blue Ridge Neuroscience Ctr., P.C., 70 S.W.3d 710, 712 (Tenn. 2002); Bowden v. Ward, 27 S.W.3d 913, 916 (Tenn. 2000); Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997).

This appeal also involves the interpretation of legislation and the application of the Tennessee Rules of Civil Procedure. The construction of statutes and procedural rules are questions of law that are reviewed de novo without any presumption of correctness. In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009); see also Carter v. Quality Outdoor Prods., Inc., 303 S.W.3d 265, 267 (Tenn. 2010) (citing Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003)). When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). Even though "the rules of civil procedure are not statutes, the same rules of statutory construction apply . . . ." Thomas v. Oldfield, 279 S.W.3d 259, 261 (Tenn. 2009) (citing Lacy v. Cox, 152 S.W.3d 480, 483 (Tenn. 2004)).

**Analysis**

Initially, a voluntary dismissal is governed by Rule 41 of the Tennessee Rules of Civil Procedure, which provides that "[a] voluntary nonsuit to dismiss an action without prejudice must be followed by an order of voluntary dismissal signed by the court and entered by the clerk. The date of entry of the order will govern the running of pertinent time periods." Tenn. R. Civ. P. 41.01(3). The 2004 Advisory Commission Comments indicate that the one-year saving statute under Tennessee Code Annotated section 28-1-105 (2000) begins with the filing of the order granting nonsuit. The saving statute specifically provides as follows:

If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest . . . .

Tenn. Code Ann. § 28-1-105(a).

The Defendant contends that this suit, filed more than one year after the order granting the voluntary nonsuit, is barred by the one-year period of limitation. The Plaintiff, however, argues that under the TPLA, the cause of action against the Defendant did not arise until the entry of the order declaring the manufacturer insolvent. The precise issue is whether, by the terms of the TPLA, the Plaintiff may rely upon the declaration of insolvency of the manufacturer to maintain his cause of action under theories of either strict liability or negligence against the Defendant even though more than one year has passed from the entry of a voluntary nonsuit against the Defendant.

### Count One – Strict Liability

In Count One of his 2009 complaint, the Plaintiff made a strict liability claim in tort against the Defendant, alleging that the truck was "defective and/or unreasonably dangerous in design or formulation" as well as "defective and/or unreasonably dangerous due to inadequate warnings."[7] Of importance, the language of the TPLA provides that the seller of a product "cannot be held to strict liability in tort unless, as to the seller, one or more of the conditions set forth in Tennessee Code Annotated section 29-28-106(b) . . . is satisfied." Wielgus v. Dover Indus., Inc., 39 S.W.3d 124, 129 (Tenn. Ct. App. 2000) (emphasis added). Among the exceptions to the rule is when the manufacturer is judicially declared insolvent. Id.

In Braswell v. AC & S, Inc., 105 S.W.3d 587 (Tenn. Ct. App. 2002), a case cited by both the Plaintiff and the Defendant, Braswell sued a manufacturer for injuries stemming

---

[7] A claim for strict liability may be properly alleged based upon the "fail[ure] to warn consumers of the dangers of a particular product at the time of sale." Nye v. Bayer Cropscience, Inc., 347 S.W.3d 686, 693 (Tenn. 2011) (internal quotation marks omitted).

from asbestos exposure. Well after the statute of limitations had elapsed, the manufacturer was declared insolvent and Braswell amended the complaint to add the seller as a defendant. Id. at 587-88. Our Court of Appeals, called upon to construe the terms of Tennessee Code Annotated section 29-28-106(b), presumed that the General Assembly was "aware . . . the manufacturer's adjudication in bankruptcy could occur after the limitation period had expired," and, therefore, concluded that the intent of the legislation was for the statute of limitations for strict liability claims asserted against sellers to begin at the time the manufacturer was adjudicated insolvent. Id. at 589-90. The court further observed that Tennessee Code Annotated section 29-28-106(b) was designed "to ensure that the injured consumer could maintain a strict liability action against whomever was most likely to compensate plaintiff for his or her injuries." Id. at 589.

The Plaintiff cites Braswell for the proposition that the cause of action in strict liability does not accrue against a seller until the judicial declaration of the insolvency of the manufacturer. The Defendant points out that the holding in Braswell is distinguishable from the case before us because Braswell did not involve a prior suit against the product's seller. While making the argument that the one-year saving statute should apply, the Defendant contends that because the Plaintiff properly alleged that it knew or should have known of the product defect in 2007, the 2009 suit is altogether barred. In essence, the Defendant argues that one cause of action exists under the TPLA – a products liability action – and that there are merely multiple theories of recovery that can be asserted under the "umbrella" of this action, as articulated in Tennessee Code Annotated section 29-28-102(6). Because, the Defendant contends, the Plaintiff previously asserted a valid cause of action under the TPLA, and the time to reinstate the suit has passed under both the statute of limitations and the saving statute, he could not re-file his "product liability action" by claiming that an alternate theory of recovery constitutes a new "cause of action."

Tennessee Code Annotated section 29-28-102(6), which defines "product liability action" for purposes of the TPLA, provides as follows:

> "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract

-8-

whatsoever.

Tenn. Code Ann. § 29-28-102(6). If this provision was the only one under consideration, this Court might be inclined to endorse the position taken by the Defendant. "In interpreting statutes, [however,] we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). In consequence, we must consider how this definition is affected by the provisions of the TPLA governing the potential liability of the seller.

Seller liability is defined in two sections of the TPLA.[8] The first section, Tennessee Code Annotated section 29-28-106(a), refers to "'product liability action[s]' as defined in § 29-28-102(6)," and would appear, at first glance, to include strict liability in tort. Tennessee Code Annotated section 29-28-106(b), however, specifically applies to a product liability action "based on the doctrine of strict liability in tort" where it is alleged that the "product . . . contain[s] or possess[es] a defective condition unreasonably dangerous to the buyer, user or consumer." This provision tracks key language relative to strict seller liability as it is

---

[8] This provision was amended, effective October 1, 2011. See Act of June 16, 2011, ch. 510, §§ 12 & 24, 2011 Tenn. Pub. Acts 1221, 1233-34. The amended statute substantially simplifies seller liability under the TPLA, providing as follows:

> No "product liability action", as defined in § 29-28-102(6), shall be commenced or maintained against any seller, other than the manufacturer, unless:
>
> (1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought;
>
> (2) Altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought;
>
> (3) The seller gave an express warranty as defined by Title 47, Chapter 2;
>
> (4) The manufacturer or distributor of the product or part in question is not subject to service of process in the State of Tennessee and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process; or
>
> (5) The manufacturer has been judicially declared insolvent.

Tenn. Code Ann. § 29-28-106 (Supp. 2011). Our analysis in this case, however, is limited to the pre-2011 version of the statute.

defined in section 402A of the Restatement (Second),[9] which had been adopted by Tennessee courts prior to the enactment of the TPLA. See, e.g., Olney v. Beaman Bottling Co., 418 S.W.2d 430, 431 (Tenn. 1967). The original version of the legislation that became the TPLA abolished strict liability of a seller as contemplated by section 402A. See, e.g., S. Journal, 90th Gen. Assemb., 2d Sess. 2073 (1978) (allowing strict liability to be asserted against a seller only if it was also the manufacturer of the product). This wholesale abrogation, however, "was met with considerable hostility by numerous members of the Tennessee Senate," Seals v. Sears, Robuck & Co., 688 F. Supp. 1252, 1254 (E.D. Tenn. 1988), and the bill was eventually amended to provide for strict seller liability under the limited circumstances currently contained in subsection (b). See id.; see also, e.g., S. Journal, 90th Gen. Assemb., 2d Sess. 2103 (1978) (adopting amendment to what is now section 29-28-106(b) prohibiting strict liability claims against sellers unless the manufacturer is not subject to service of process or "such manufacturer is insolvent").

---

[9] Section 402A provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

While section 29-28-106(b) refers to, as does section 402A, a product containing "a defective condition unreasonably dangerous," another provision of the TPLA states that a manufacturer or seller cannot be held liable for injuries caused by a product "unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a) (emphasis added); see also Tenn. Code Ann. § 29-28-103(a) (referring to limitations on actions based upon injury caused by a product in a "defective or unreasonably dangerous condition"). Other courts have held that a plaintiff need only prove that the product was either defective or in a condition unreasonably dangerous under the TPLA. See, e.g., Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230, 235 (6th Cir. 1988); Whaley v. Rheem Mfg. Co., 900 S.W.2d 296, 299 (Tenn. Ct. App. 1995). Because the issue is not before us, we need not determine whether a conflict exists between section 29-28-106(b) and these provisions or what a plaintiff must prove regarding the product's condition when seeking to recover under strict liability in tort.

-10-

In light of the specific language chosen by the legislature, as well as the history behind this provision, we view section 29-28-106(b) as governing those limited instances in which a seller may be sued in strict liability in tort. Accordingly, we conclude that section 29-28-106(a) first addresses additional circumstances under which a products liability action is prohibited against the seller of a product,[10] and second, by implication, those instances in which a plaintiff may pursue a claim directly against the seller because the defective product was not sold in a sealed container and the seller was "afforded [a] reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition."[11] Tenn. Code Ann. § 29-28-106(a). These are the theories of liability listed in section 29-28-102(6), other than that which is specifically referenced in section 29-28-106(b), see, e.g., Washington v. Robertson Cnty., 29 S.W.3d 466, 475 (Tenn. 2000) (noting that "a specific statutory provision . . . will control over a more general statutory provision"), and that which is excluded by subsection (a) itself. See Tenn. Code Ann. § 29-28-106(a)(2) (stating that the prohibition against liability contained in subsection (a) "shall not apply to . . . [a]ctions based upon a breach of warranty, express or implied"). These theories include negligence, negligent or innocent breach of or failure to discharge a duty to warn or instruct,[12] negligent or innocent misrepresentation,

---

[10] This provision of the TPLA is based on the premise that most sellers "have little or no knowledge of or control over whether the products they sell may be dangerously defective" and generally "have no practical way to test products to discover hidden dangers." 2 M. Stuart Madden et al., Madden & Owen on Products Liability, § 19.1 (3d ed. 2000), available at MOPL 19:1 (Westlaw) [hereinafter MOPL 19:1]. As a result, courts traditionally held that a seller had no duty to inspect or test a product or warn consumers of latent defects "particularly . . . when the retail seller serves merely as a conduit of a product that arrives at the retailer in a pre-packaged condition" and therefore was shielded from liability "for negligence when selling goods in their original, sealed containers or packages." Id. This "general no-duty to inspect, test, or warn rule has exceptions in cases where the retail seller knows or has reason to know of the danger, in which situations the seller has a duty of reasonable care to test, inspect, or warn." Id.; cf. Gentry v. Hershey Co., 687 F. Supp. 2d 711, 721 (M.D. Tenn. 2010) (stating that subsection (a) "was intended to protect sellers from liability associated with latent defects passed to them from the manufacturer of the product, not to relieve the seller from all liability to the consumer when the seller causes or allows the product to become adulterated"). Subsection (a) merely codifies this common law doctrine, often referred to as the "sealed-container" or "original-package" doctrine or defense. See MOPL 19:1.

[11] We observe that section 29-28-106(a) only refers to "the existence of the defective condition," whereas section 29-28-106(b) refers to "a defective condition unreasonably dangerous." The legislature's use of different terminology to describe the necessary condition of the product for purposes of seller liability under these two provisions further demonstrates a distinction.

[12] While liability based upon an innocent "breach of or failure to discharge a duty to warn or instruct" could conceivably be construed as "strict," strict liability derived from section 402A of the Restatement (Second) of Torts does not hinge on the nature of the defendant's conduct; in other words, "whether [the defendant] acted intentionally, negligently, or innocently[] is not important on the issue of his liability."

(continued...)

-11-

concealment or nondisclosure,[13] "or any other substantive legal theory in tort or contract whatsoever."

Although, under subsection (a), a plaintiff may sue a seller directly under certain circumstances, a plaintiff may not sue a seller in strict liability under subsection (b) unless, as is pertinent to this case, the seller has been judicially declared insolvent. The effect of these provisions is to create two causes of action under which a claimant may seek relief from a seller of a product, either under the circumstances contemplated by subsection (a), which contain various theories of recovery, or those contemplated under subsection (b), which pertain only to strict liability in tort where the product is alleged to contain a defective condition unreasonably dangerous to the buyer, user, or consumer.

Further, this Court, while observing that "the phrase 'cause of action' can, at times, be difficult to define," has held that "a common thread among the definitions . . . is that a 'cause of action' is associated with a right of one party to sue another." Shelby Cnty. Health Care Corp. v. Nationwide Mut. Ins. Co., 325 S.W.3d 88, 96 (Tenn. 2010) (citation omitted); see also 1 Am. Jur. 2d Actions § 1 (2005) ("Although it has been said that the term 'cause of action' has different meanings in different contexts, a 'cause of action' generally is understood as a set of facts which gives rise to a right to seek a remedy."). Pursuant to Tennessee Code Annotated section 29-28-106(b), the right of a claimant to assert a claim for strict liability against a seller does not arise until the manufacturer has been judicially declared insolvent.[14] Cf. Seals, 688 F. Supp. at 1257 (finding "it . . . clear that the 'commenced or maintained' language [contained in section 29-28-106(b)] does not mean that

---

[12](...continued)
Wyatt v. Winnebago Indus., Inc., 566 S.W.2d 276, 279 (Tenn. Ct. App. 1977); accord Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003) (observing that strict liability involves "examin[ing] the product itself, and sternly eschew[ing] considerations of the reasonableness of the [defendant's] conduct").

[13] Again, liability based upon an innocent misrepresentation, concealment, or nondisclosure could be construed as "strict." However, liability under this theory, which is based on section 402B of the Restatement (Second) of Torts, "is entirely distinct from a Section 402A claim," as liability is "not condition[ed] . . . on the product being defective or unreasonably dangerous." Ladd by Ladd v. Honda Motor Co., 939 S.W.2d 83, 97 (Tenn. Ct. App. 1996). Instead, liability is based upon that which is communicated to the plaintiff and "does not require that the product contain a 'defect' unless the manufacturer falsely states that the product is free thereof." David G. Owens, Products Liability Law § 3.4 (2d ed. 2008).

[14] In addition, if the product was sold in a sealed container and/or was acquired and sold by the seller under circumstances in which the seller had no reasonable opportunity to inspect the product such that, in the exercise of reasonable care, the defective condition would be discovered, the manufacturer's insolvency would also allow a plaintiff to then bring a claim against the seller under any of the theories of liability mentioned in section 29-28-106(a).

-12-

the manufacturer must be insolvent on the fortuitous date that the complaint is filed. What is important is that before a seller may be subjected to liability, it must be determined that the manufacturer is insolvent"). And while it is true that a tort claim is said to accrue "when the plaintiff knows, or in the exercise of reasonable care and diligence should know, that an injury has been sustained," Wyatt v. A-Best, Co., 910 S.W.2d 851, 854 (Tenn. 1995), we cannot ignore the fact that, under the terms of the statute, a plaintiff does not have the right to sue a seller in strict liability until the manufacturer is judicially declared insolvent. It logically follows that the limitations period applicable to a cause of action does not begin until the cause of action itself accrues. See 18 Tenn. Jur. Limitation of Actions § 19 (2005) ("It is a general rule that the statute of limitations begins to run as soon as there is a right of action . . . ."); id. § 20 ("The statutes of limitations do not begin to run in favor of or against a party until the accrual of a right of action in favor of or against him."); see also Vason v. Nickey, 438 F.2d 242, 247 (6th Cir. 1971); State ex rel. Cardin v. McClellan, 85 S.W. 267, 270 (Tenn. 1905) ("[N]o time runs to the plaintiff until he has the right to sue[. T]he statute of limitation[s] does not begin to run until that time[, as i]f the rule [were] otherwise, meritorious actions might be barred before the plaintiff had the right to bring his suit. This would work gross injustice."). As the Court of Appeals observed in Braswell, "[t]o hold that the statute of limitations ran before the manufacturer was adjudicated bankrupt[] would render the statute in part, meaningless." 105 S.W.3d at 590. Because we presume that the General Assembly did not intend to enact meaningless or useless legislation, Texas Gas Transmission Corp. v. Atkins, 327 S.W.2d 305, 307 (Tenn. 1959), it is our view that until the judicial declaration of insolvency is made, or until one of the other two exceptions contained in Tennessee Code Annotated section 29-28-106(b) is met, a claimant has no cause of action against a seller in strict liability pursuant to section 29-28-106(b).[15]

When the Plaintiff initially filed his suit in 2007, the truck's manufacturer, Chrysler, had not yet been judicially declared insolvent. The Plaintiff's cause of action in strict liability against the Defendant did not accrue until this declaration occurred. Because the Plaintiff "commenced" his suit against the Defendant by filing a complaint within one year of Chrysler's insolvency, see Tenn. R. Civ. P. 3,[16] his strict liability claim against the Defendant was asserted in a timely manner.[17]

---

[15] This holding should not be construed to mean that a bankruptcy filing is a judicial declaration of insolvency. See, e.g., Nye, 347 S.W.3d at 693 ("[A] debtor need not be insolvent to qualify for protection under Chapter 11 of the Bankruptcy Code.").

[16] A civil action is "commenced within the meaning of any statute of limitations upon [the] filing of a complaint" with the clerk of the court. Tenn. R. Civ. P. 3.

[17] As noted by the Plaintiff, his strict liability claim is not foreclosed by the statute of repose
(continued...)

-13-

**Count Two – Negligence**

Under the TPLA, a judicial declaration of the insolvency of a product's manufacturer allows a suit to be brought against the seller not only in strict liability under Tennessee Code Annotated section 29-28-106(b), but also under the circumstances set out in Tennessee Code Annotated section 29-28-106(a). Subsection (a) provides that a products liability action shall not be commenced or maintained against a seller when (1) "the product is acquired and sold by the seller in a sealed container and/or" (2) "when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition." Tenn. Code Ann. § 29-28-106(a). Even when these circumstances are present, however, a suit may be filed against the seller if the manufacturer has been judicially declared insolvent. Tenn. Code Ann. § 29-28-106(a)(3).[18]

Our interpretation of the language contained in section 29-28-106(a) is that a product liability action, other than one based on strict liability as contemplated in subsection (b), can be maintained against a seller if the product is not in a sealed container and the seller is afforded a reasonable opportunity to inspect the product in such a way that, in the exercise of reasonable care, would reveal the defective condition. We must consider, therefore, whether the Plaintiff's negligence count in the 2009 complaint makes such allegations.

As previously noted, courts in Tennessee must liberally construe litigants' complaints. See Webb, 346 S.W.3d at 426. In Count Two of the 2009 complaint, the Plaintiff plainly asserted negligence on the part of the Defendant, contending that the Defendant breached its "duty to exercise reasonable care to properly inspect, market, advertise, and sell" the truck. These allegations suggest that the Defendant had the opportunity to inspect the truck, discover the defect, and warn the Plaintiff of its existence, yet failed to do so. The cause of action asserted in Count Two, based upon the Defendant's alleged failure to exercise reasonable care in discovering the truck's defective parking system, could have been asserted against Beaman at the time the initial suit was filed. Because more than one year passed before the suit was reinstated in 2009, the products liability claim based upon the negligence of the seller is barred, notwithstanding the subsequent insolvency of Chrysler.

---

[17](...continued)
contained in the TPLA, which states, in pertinent part, that an action "must be brought within ten (10) years from the date on which the product was first purchased for use or consumption." Tenn. Code Ann. § 29-28-103(a).

[18] The other exceptions, not at issue here, occur when the action is based upon express or implied warranty or the manufacturer is not subject to service of process. Tenn. Code Ann. § 29-28-106(a)(1)–(2).

-14-

In summary, the plain language of Tennessee Code Annotated section 29-28-106(a) exempts a seller from liability absent being afforded a "reasonable opportunity to inspect the product in such a manner which would or should . . . reveal the existence of the defective condition." Proof of the opportunity to inspect and the failure to exercise reasonable care may have subjected the Defendant to liability in the initial suit. Thus, the Plaintiff's claim for negligence against the Defendant could have been litigated in the 2007 action. The 2009 claim based upon the theory of negligence was, therefore, filed beyond the saving period, see Tenn. Code Ann. § 28-1-105, and barred by the statute of limitations. Tenn. Code Ann. § 28-3-104.

**Conclusion**

Because the claim by the Plaintiff against the Defendant under the theory of strict liability did not arise until the declaration of Chrysler's insolvency, the claim was not barred by the statute of limitations. The Defendant's motion to dismiss was properly denied as to the strict liability claim, but should have been granted as to the claim of negligence. The judgment of the trial court is, therefore, affirmed in part, reversed in part, and the cause is remanded for trial. Costs are adjudged against the Defendant, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE