IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2017 Session

## BETTY J. GRIZZLE v. PARKWEST MEDICAL CENTER

Appeal from the Circuit Court for Knox County
No. 3-33-16    Deborah C. Stevens, Judge

_____

### No. E2016-01068-COA-R3-CV
_____

The plaintiff initiated this health care liability action on January 25, 2016. The defendant medical provider filed a motion to dismiss, asserting that the plaintiff had failed to attach the documentation required by Tennessee Code Annotated § 29-26-121(b) to demonstrate that proper pre-suit notice had been transmitted. The defendant also asserted that the plaintiff's claims should be dismissed for failure to substantially comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E) regarding a medical authorization compliant with the Health Insurance Portability and Accountability Act ("HIPAA"). While noting that the plaintiff had substantially complied with Tennessee Code Annotated § 29-26-121(a)(4) and (b), the trial court found that the medical authorization forwarded by the plaintiff was incomplete and failed to comply with HIPAA's release requirements. The trial court therefore dismissed the plaintiff's claims. The plaintiff has timely appealed. We affirm the trial court's determination that the plaintiff substantially complied with Tennessee Code Annotated § 29-26-121(a)(4) and (b). We reverse, however, the trial court's determination that the plaintiff's claims should be dismissed for failure to substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Betty J. Grizzle.

Broderick L. Young and F. Michael Fitzpatrick, Knoxville, Tennessee, for the appellee, Parkwest Medical Center.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Betty J. Grizzle, underwent total hip replacement surgery at Parkwest Medical Center ("Parkwest") on or about November 4, 2014. Ms. Grizzle awoke from her surgery experiencing severe chest pain. When Ms. Grizzle complained to the hospital staff about this pain, hospital staff performed an x-ray. The x-ray confirmed that Ms. Grizzle was suffering from broken ribs. Ms. Grizzle was apparently provided no explanation as to how the injury to her ribs had occurred.

On January 25, 2016, Ms. Grizzle filed a health care liability action against Parkwest in the Knox County Circuit Court ("trial court"). In her complaint, Ms. Grizzle specifically averred that she had complied with the pre-suit notice requirements found in Tennessee Code Annotated § 29-26-121. Despite such averment, Ms. Grizzle did not provide the requisite documentation with her complaint establishing proof of pre-suit notice. Ms. Grizzle did, however, file the certificate of good faith required by Tennessee Code Annotated § 29-26-122.

Parkwest subsequently filed a motion to dismiss, asserting that Ms. Grizzle had failed to attach to her complaint the documentation required by Tennessee Code Annotated § 29-26-121(a)(4) and (b). Parkwest further asserted that the medical authorization provided with Ms. Grizzle's pre-suit notice was not HIPAA compliant. Parkwest attached a copy of the medical authorization that had accompanied the pre-suit notice, demonstrating that certain blanks on the form had not been filled, including the name of the medical provider and the treatment dates. Parkwest did not dispute, however, that Ms. Grizzle transmitted pre-suit notice.

Ms. Grizzle subsequently provided a "notice of filing" on March 14, 2016, attaching copies of the pre-suit notice letter and allegedly HIPAA-compliant authorization sent to Parkwest. Ms. Grizzle did not file the affidavit required by Tennessee Code Annotated § 29-26-121(a)(4). On April 8, 2016, the trial court conducted a hearing regarding Parkwest's motion to dismiss. The court subsequently entered an order on April 29, 2016, dismissing Ms. Grizzle's claims. The court first determined that Ms. Grizzle had substantially complied with Tennessee Code Annotated § 29-26-121(a)(4) and (b), despite the lack of an affidavit. However, the court also determined that Ms. Grizzle had failed to fulfill the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E) because the medical authorization provided by Ms. Grizzle was not HIPAA compliant. The court specifically found that the authorization contained a number of spaces for information that remained blank, including the spaces

for the name of the medical provider to whom the authorization was directed and for Ms. Grizzle's treatment dates. The court relied upon this Court's decision in *Bray v. Khuri* in determining that Ms. Grizzle's medical authorization did not comply with HIPAA's requirements. *See Bray v. Khuri*, No. W2015-00397-COA-R3-CV, 2015 WL 7775316, at *4 (Tenn. Ct. App. Dec. 3, 2015), *rev'd by Bray v. Khuri*, __ S.W.3d __, No. W2015-00397-SC-R11-CV, 2017 WL 2856697 (Tenn. July 5, 2017). The trial court thereby dismissed Ms. Grizzle's complaint pursuant to Tennessee Code Annotated § 29-26-121. Ms. Grizzle timely appealed.

## II. Issues Presented

Ms. Grizzle presents one issue for our review, which we have restated slightly:

1. Whether the trial court erred by dismissing Ms. Grizzle's action based upon her failure to substantially comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E) regarding a HIPAA-compliant medical release.

Parkwest raises the following additional issue, which we have also restated slightly:

2. Whether the trial court erred by determining that Ms. Grizzle substantially complied with the requirements of Tennessee Code Annotated § 29-26-121(a)(4) and (b) regarding the filing of documentation establishing that proper pre-suit notice was provided.

## III. Standard of Review

Our Supreme Court has elucidated the following regarding the standard of review applicable to a motion to dismiss a health care liability action based upon the plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121:

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted

3

by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

Because the trial court's denial of the Defendants' motion involves a question of law, our review is de novo with no presumption of correctness. *Graham v. Caples,* 325 S.W.3d 578, 581 (Tenn. 2010). . . . We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in favor of the plaintiff. *Lind v. Beaman Dodge, Inc.,* 356 S.W.3d 889, 894 (Tenn. 2011).

* * *

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space,* 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains,* 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.,* 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker,* 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a statute is also a question of law which we review de novo without any presumption of correctness. *Lind,* 356 S.W.3d at 895.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012).

In *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015), our Supreme Court clarified:

> The content and affidavit requirements of Tennessee Code Annotated sections 29-26-121(a)(2), (a)(3), and (a)(4) are not mandatory, but directory, and can be achieved through substantial compliance. *See Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC,* 433 S.W.3d 512, 520 (Tenn. 2014) (allowing substantial compliance with the affidavit requirement under Tennessee Code Annotated sections 29-26-121(a)(3)(B) and (a)(4)); *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.,* 418 S.W.3d 547, 555 (Tenn. 2013) (allowing substantial compliance with the HIPAA form requirement under Tennessee Code Annotated section 29-26-121(a)(2)(E)). "[U]nless strict compliance with a notice content requirement 'is essential to avoid prejudicing an opposing litigant,' substantial compliance with a content requirement will suffice." *Thurmond,* 433 S.W.3d at 520 (quoting *Stevens,* 418 S.W.3d at 555).

The High Court has also explained that to determine whether a plaintiff has substantially complied with a statutory requirement, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.,* 418 S.W.3d 547, 556 (Tenn. 2013).

### IV. Requirements Concerning HIPAA-Compliant Medical Authorization

Ms. Grizzle contends that the trial court improperly dismissed her claim based on her failure to substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E). Parkwest argues that the trial court correctly dismissed the action because the medical authorization provided by Ms. Grizzle was insufficient to allow Parkwest to access relevant medical records to mount a defense. Tennessee Code Annotated § 29-26-121 (Supp. 2016) provides in pertinent part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

In this case, the trial court determined that Ms. Grizzle had failed to comply with Tennessee Code Annotated § 29-26-121(a)(2)(E) and that such failure was fatal to her claims. The trial court noted the following regarding Ms. Grizzle's pre-suit notice:

In this case, on October 15th, 2015, the plaintiff, through counsel, submitted a pre suit notice letter which stated the claimant's name, address, Social Security Number and date of birth. The letter stated Ms. Grizzle was "asserting a potential claim for medical malpractice concerning the events that took place at the Parkwest Medical Center on or between November 4, 2014 and November 7, 2014." The second paragraph of the letter states that "HIPAA compliant medical authorizations permitting you to obtain a complete copy of Ms. Grizzle's medical records from her various providers are enclosed."

Enclosed with the letter was a document titled "Patient Authorization," in which a number of spaces had been left blank. Underneath [its] title, the form states, "To Permit Use and Disclosure of Health Information," and again provides the name of [Ms.] Grizzle, her date of birth, and her Social Security Number. It then states, "I am either the patient or the patient's representative. By signing this form, I authorize:" It then provided a space for the name of the medical provider and for the provider's phone number, but both spaces were left blank. The form then provided a space to identify the party to whom disclosure may be made, and this space is filled in with the name of Parkwest Medical Center.

6

However, the form then provided a space to list treatment dates for which protected health information may be disclosed, and this space was also left blank.

The form continues and includes the requisite notification that the patient can revoke the form, but again spaces are left blank as to whom is to receive the revocation, and as to whom may rely on the authorization until they receive written notice that the patient is revoking it.

In her principal brief on appeal, Ms. Grizzle concedes that the release form "included in Ms. Grizzle's pre-suit notice packet did not denote on the face of the form Ms. Grizzle's treatment dates, who could receive the authorization and who the authorization should go to." Ms. Grizzle argues, however, that the pre-suit notice letter contained this information. Therefore, according to Ms. Grizzle, the omissions on the medical authorization were not sufficient to deny Parkwest access to Ms. Grizzle's medical records.

As our Supreme Court has explained:

Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records. *See* 45 C.F.R. § 164.508(a)(1) ("a covered entity may not use or disclose protected health information without an authorization that is valid under this section"). Tenn. Code Ann. § 29-26-121(d)(1) creates a statutory entitlement to the records governed by § 29-26-121(a)(2)(E). *See* Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section *shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice . . . .*") (emphasis added).

*Stevens*, 418 S.W.3d at 555.

The High Court further elucidated:

Federal regulations state that a HIPAA compliant authorization must include the following six elements:

7

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure . . . .

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure . . . .

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1).

*Stevens*, 418 S.W.3d at 555-56. "In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id*. at 556.

The trial court placed significant reliance on this Court's decision in *Bray*, 2015 WL 7775316, at *4, in dismissing Ms. Grizzle's complaint. In *Bray*, the plaintiff filed a health care liability action and sent the requisite pre-suit notice, but the plaintiff's attached medical authorization was deficient. *Id*. at *1. Specifically, the medical authorization "did not include a description of the information to be used" and "failed to specifically identify which health care providers were authorized to make the requested disclosures." *Id*. at *4. The plaintiff first argued that she was not required to provide a HIPAA-compliant medical authorization when the defendant was the sole medical provider receiving the notice. *Id*. at *3. This Court rejected that contention, determining:

8

Without a HIPAA-compliant authorization form, the full purpose of the statute becomes frustrated. While Appellee [medical provider] may have physically possessed Decedent's records, he was unable to review them with his attorney in order to evaluate the merits of Appellant's claim. Because we cannot construe a statute in such a way that would violate "the obvious intention of the legislature," we conclude that Appellant was required to provide a HIPAA-compliant authorization.

*Id.* (internal citations omitted).

Our Supreme Court, however, recently reversed this Court's holding in *Bray*. *See Bray v. Khuri*, __ S.W.3d __, No. W2015-00397-SC-R11-CV, 2017 WL 2856697 (Tenn. July 5, 2017). The Supreme Court elucidated:

We hold that, based on the clear and unambiguous language of section 29-26-121(a)(2)(E), a plaintiff need not provide a HIPAA-compliant authorization when a single health care provider is given pre-suit notice of a health care liability claim. The authorization only allows a potential defendant to obtain the prospective plaintiff's medical records from any other healthcare provider also given notice and identified as a potential defendant in the pre-suit notice. This authorization requirement is consistent with section 29-26-121(d)(1), which specifies that all parties to a healthcare suit "shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice" and that the claimant complies with this requirement by providing a HIPAA-compliant medical authorization with pre-suit notice. *Id.* § 29-26-121(d)(1).

Dr. Khuri argues that HIPAA prohibits the disclosure of a patient's medical records to counsel for evaluating the merits of a potential claim absent a valid medical authorization. HIPAA, enacted in 1996, establishes requirements for protecting confidential medical information by healthcare providers. As a general rule, HIPAA prohibits a healthcare provider from using or disclosing protected health information without a valid authorization. 45 C.F.R. § 164.508(a)(1). However, HIPAA regulations allow a healthcare provider to "use or disclose protected health information for treatment, payment, or *health care operations*," with some exceptions for certain uses or disclosure requiring an authorization. 45 C.F.R. § 164.506(a) (emphasis added); *see also id.* § 164.506(c)(1). "Health care operations" include "[c]onducting or arranging for medical review, *legal services*, and auditing functions." *Id.* § 164.501 (emphasis added). The United States Department of Health and Human Services ("HHS"), in its

9

Frequently Asked Questions ("FAQ") for Professionals pages of its website, indicates that a healthcare provider may use or disclose protected health information for litigation "whether for judicial or administrative proceedings . . . or as part of the covered entity's health care operations." HHS further recognizes that "[i]n most cases, the covered entity will share protected health information for litigation purposes with its lawyer, who is either a workforce member or a business associate." . . . HIPAA does not require Dr. Khuri to obtain a medical authorization to use a patient's medical records in his possession and consult with counsel to evaluate the merits of a potential claim.

* * *

Dr. Khuri relies on *Roberts v. Prill*, E2013-02202-COA-R3-CV, 2014 WL 2921930, at *6 (Tenn. Ct. App. June 26, 2014), *no perm. app. filed*, an unreported decision, to support his argument that a HIPAA-compliant medical authorization was required to enable him to use Mr. Bray's medical records in his possession. *Roberts*, however, is distinguishable. In *Roberts*, the plaintiff filed a healthcare liability suit against the decedent's treating oncologist and the specialty healthcare group that employed the oncologist. *Id.* at *1. The trial court granted the defendants' motions to dismiss based on its finding that the plaintiff failed to provide a HIPAA-compliant authorization and failed to attach a copy of the pre-suit notices to her complaint. The Court of Appeals affirmed. *Id.* While *Roberts* and the case at bar are both healthcare liability suits concerning incomplete medical authorizations, they are factually distinguishable on a critical point: *Roberts* involved two defendants, whereas this case involves a single defendant. Neither the trial court nor the Court of Appeals in *Roberts* considered whether section 29-26-121(a)(2)(E) applies when a single healthcare provider is named as a potential defendant.

* * *

Because we conclude that Tennessee Code Annotated section 29-26-121(a)(2)(E) does not apply here, where only a single healthcare provider received pre-suit notice as a potential defendant, the issue of whether Mrs. Bray substantially complied with section 29-26-121(a)(2)(E) is pretermitted.

* * *

10

After careful review, we hold that a HIPAA-compliant medical authorization was not required under section 29-26-121(a)(2)(E) because Mrs. Bray's pre-suit notice was sent to a single provider.

*Id.* at *2-4 (footnotes omitted).

Likewise, in this case, the provision of pre-suit notice was required for only a single defendant. The Supreme Court in *Bray* concluded that plaintiffs suing a single health care liability provider are excused from complying with Tennessee Code Annotated § 29-26-121(a)(2)(E). *Id.* Following the *Bray* decision, we conclude that Tennessee Code Annotated § 29-26-121(a)(2)(E) is inapplicable to Ms. Grizzle's pre-suit notice in this matter because Parkwest was the sole defendant. We accordingly reverse the trial court's dismissal of Ms. Grizzle's claims based on Tennessee Code Annotated § 29-26-121(a)(2)(E).

## V. Requirements Concerning Documentation to be Filed with Complaint

Parkwest also asserts that the trial court erred by failing to dismiss Ms. Grizzle's complaint due to her failure to concomitantly file the requisite documentation pursuant to Tennessee Code Annotated § 29-26-121(a)(4) and (b). These provisions state:

Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

* * *

If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

Tenn. Code Ann. § 29-26-121(a)(4) and (b).

11

Parkwest argues that Ms. Grizzle failed to comply with these statutory provisions despite her "notice of filing" on March 15, 2016, because the requisite affidavit of the party mailing the notice was never filed. The trial court determined, however, that Ms. Grizzle had substantially complied with the documentation requirements "even absent the filing of the required affidavit."

Our Supreme Court addressed the subject of substantial compliance in relation to Tennessee Code Annotated § 29-26-121(a)(4) and (b) in *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512 (Tenn. 2014). In *Thurmond*, the defendants claimed that the plaintiff's failure to file with the complaint an affidavit demonstrating proof of pre-suit notice amounted to non-compliance with Tennessee Code Annotated § 29-26-121(a)(3), which mandated dismissal of the action. *Id.* at 518. Five days after filing his complaint, the plaintiff filed a disc containing documentation showing compliance with Tennessee Code Annotated § 29-26-121(a), along with a notice of filing. *Id.* at 514. As the defendants pointed out: "(1) the complaint did not include the date pre-suit notice was sent; (2) the disc referred to in the complaint . . . was not actually filed with the complaint; and (3) the disc filed five days after the complaint did not contain an affidavit of the person who sent pre-suit notice." *Id.* at 515. Three weeks after the defendants filed a motion for summary judgment, the plaintiff filed an affidavit "verifying notice to healthcare providers," in which plaintiff's counsel stated that he had "mailed by certified mail, return receipt requested, written notice of [P]laintiff's claim" to defendants months prior to filing his complaint. *Id.*

Regarding compliance with Tennessee Code Annotated § 29-26-121(a)(4) and (b), the *Thurmond* Court explained:

> We agree with Defendants that the plain statutory language directed Plaintiff to file "with the complaint," *id.* § 29-26-121(a)(3), "an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested," *id.* § 29-26-121(a)(4). However, as this Court recognized in *Myers,* the essence and fundamental purpose of the statute is providing notice of a potential health care liability claim before a lawsuit is filed. 382 S.W.3d at 309. While the statute states that the requirement of timely service of pre-suit notice will be deemed satisfied if a plaintiff files an affidavit and other documents with the complaint, conspicuously absent from the statute is any language indicating that the failure to file the affidavit, and other specified documents, with the complaint renders timely service of pre-suit notice ineffective. *Cf. Fair v. Cochran,* 418 S.W.3d 542, 545 (Tenn. 2013) (refusing to hold that the prompt return of proof of service of process is necessary to render

commencement of a lawsuit effective to toll the statute of limitations because Tennessee Rule of Appellate Procedure 3 contained no language to that effect). Indeed, the affidavit functions as confirmation that pre-suit notice was timely *served* on potential defendants in a manner authorized by statute. *Cf. Presley v. Bennett,* 860 S.W.2d 857, 860 (Tenn. 1993) ("Statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory."). As this case clearly illustrates, where pre-suit notice *was* timely served, insisting upon strict compliance with the statute requiring the filing of an affidavit "with the complaint," Tenn. Code Ann. § 29-26-121(a)(3), is not "essential to avoid prejudicing an opposing litigant." *Stevens,* 418 S.W.3d at 555. As already stated, Defendants have not made any claim of prejudice resulting from Plaintiff's failure to file the affidavit with the complaint. Thus, substantial compliance with the statutory affidavit requirement will suffice. *See Stevens,* 418 S.W.3d at 555.

Furthermore, the record in this case sufficiently establishes that Plaintiff substantially complied with the statutory affidavit requirement. Here, Plaintiff's complaint included a paragraph, as required by section 29-26-121(b), stating that he had complied with the statutory pre-suit notice requirement, although Plaintiff's complaint did not include the exact date notice was sent. Furthermore, while Plaintiff failed to file Exhibit A with the complaint, he filed it five days later. Exhibit A contained images of: (1) the pre-suit notice sent to Defendants; (2) "a certificate of mailing from the United States postal service stamped with the date of mailing," Tenn. Code Ann. § 29-26-121(a)(4), which listed counsel for Plaintiff as the sender; and (3) copies of the certified mail return receipts containing the signature of the person who accepted service of the pre-suit notice for Defendants. Additionally, Plaintiff filed an affidavit on April 5, 2012, "verifying notice to healthcare providers," in which Plaintiff's counsel stated that he had "mailed by certified mail, return receipt requested, written notice of [P]laintiff's claim" to Defendants on October 4, 2011, and that, as required by statute, the written notice included the names and addresses of all healthcare providers to whom notice was being sent and "HIPAA compliant medical authorizations permitting the potential defendants to obtain complete medical records from each other provider being sent notice." *See* Tenn. Code Ann. § 29-26-121(a)(2). The April 5, 2012 affidavit thus functioned to confirm generally the specific information Defendants received via Exhibit A only five days after the complaint was filed. In effect, the affidavit merely summarized and duplicated information already conveyed to Defendants by the contents of Exhibit A.

13

Thus, the undisputed facts in the record, including the filing of the affidavit on April 5, 2012, establish that Plaintiff substantially complied with the affidavit filing requirement of Tennessee Code Annotated subsections 29-26-121(a)(3)(B) and (a)(4).

\* \* \*

We conclude that substantial compliance is sufficient to satisfy Tennessee Code Annotated subsections 29-26-121(a)(3)(B) and (a)(4) . . . .

*Id.* at 520-21 (footnotes omitted).

In the case at bar, although Ms. Grizzle failed to file the documentation required by Tennessee Code Annotated § 29-26-121(a)(4) and (b) with her complaint, she subsequently filed a notice of filing, which included a copy of Ms. Grizzle's pre-suit notice letter; a signed, certified mail receipt demonstrating delivery of the pre-suit notice; and the medical authorization form. Furthermore, Ms. Grizzle explicitly stated in her complaint that pre-suit notice had been provided. Parkwest did not dispute receipt of pre-suit notice and did not claim that the lack of the affidavit prejudiced its position in any way. As our Supreme Court has explained, the affidavit would have merely confirmed the specific information Ms. Grizzle had already provided. *Id.* at 521. We therefore affirm the trial court's determination that Ms. Grizzle substantially complied with Tennessee Code Annotated § 29-26-121(a)(4) and (b) in this matter.

VI. Conclusion

For the foregoing reasons, we affirm the trial court's determination that Ms. Grizzle substantially complied with Tennessee Code Annotated § 29-26-121(a)(4) and (b). Having concluded that Tennessee Code Annotated § 29-26-121(a)(2)(E) is inapplicable to this action involving a single defendant, however, we reverse the trial court's determination that Ms. Grizzle's claims should be dismissed for failure to substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E). *See Bray*, __ S.W.3d at __, 2017 WL 2856697, at \*4. We remand this matter to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, Parkwest Medical Center.

_____
THOMAS R. FRIERSON, II, JUDGE