IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 22, 2018 Session

## VICKIE GROVES, ET AL. v. ERNST-WESTERN CORPORATION

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2014-CV-1243        Joe Thompson, Judge**

_____

### No. M2017-01779-COA-R3-CV

_____

This is a jury case. Appellants sued Appellee, hotel, for violation of the Tennessee Consumer Protection Act ("TCPA") and the Tennessee Identity Theft Deterrence Act ("TITDA"). The trial court granted a pre-trial motion for summary judgment as to Appellants' TITDA claims. The remaining TCPA claims proceeded to trial, and the trial court delivered a modified jury instruction as a sanction against Appellee for alleged discovery abuse. The jury returned a verdict in favor of Appellee. Appellants appeal. Appellee appeals the trial court's denial of its request for attorney's fees and costs pursuant to Tennessee Rule of Civil Procedure 68. We reverse the trial court's denial of Appellee's costs pursuant to Rule 68; the trial court's order is otherwise affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Affirmed in Part, and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jackie Eugene Sharp, Jr. and Natalie Rowan Sharp, Nashville, Tennessee, for the appellants, Vickie Groves and Charles Groves.

Abigail Marie Strader and R. Patrick Parker, Gallatin, Tennessee, for the appellee, Ernst-Western Corporation.

### OPINION

### I. Background

On April 2, 2014, Tieasha Adams asked Vickie Groves (together with Charles Groves, "Appellants"),[1] for help reserving a room at the Holiday Inn Express in

_____

[1] Ms. Adams has a daughter with Christopher Groves, Mr. Charles Groves' estranged son.

Hendersonville, Tennessee. Ernst-Western Corporation ("Appellee") owns the hotel. Mrs. Groves alleges that Ms. Adams told Mrs. Groves she was staying one night at the hotel because her apartment was not yet ready for move-in. Mrs. Groves also alleges that Ms. Adams said she was going to pay for her stay with cash, but hotel staff informed Ms. Adams that she needed a credit card on file for the stay. Ms. Adams asked to use Mrs. Groves' credit card as the card on file. Mrs. Groves agreed to meet Ms. Adams at the hotel with her card. Mrs. Groves alleges that she was told by hotel staff that: (1) her credit card would not be charged because Ms. Adams was paying for the room with cash; (2) if Ms. Adams did not pay for her stay, the hotel would call Mrs. Groves before charging her card; and (3) an authorization from Mrs. Groves was required before any charges could be posted to her credit card. Based on these alleged representations, Mrs. Groves presented hotel staff with her credit card in order to reserve Ms. Adams' room for the night of April 2, 2014 at a fixed rate of ninety-nine dollars ($99). Mrs. Groves also signed a reservation card, which stated: "I agree my liability for this bill is not waived and agree to be held personally liable in the event that the indicated person, company or association fails to pay for nay [sic] part of the full amount of the charges." Ms. Adams did not check-out of the hotel on April 3, 2014. Instead, she stayed at the hotel for a total of thirty (30) nights and charged each night to Mrs. Groves' credit card. In three separate transactions, on April 4, 2014, April 27, 2014, and May 2, 2014, Mrs. Groves' credit card was charged a total of $3,402.40.

In August of 2014, Appellants brought an action against Appellee in the General Sessions Court for Sumner County, Tennessee. After the general sessions court found in favor of Appellee, Appellants timely filed an appeal to the Circuit Court for Sumner County, Tennessee at Gallatin ("trial court"). On December 30, 2014, Appellants filed an Amended Complaint against Appellee in the trial court.[2] Appellants' Amended Complaint alleges: (1) fraud; (2) violation of the TCPA; (3) violation of the TITDA; (4) unjust enrichment; and (5) negligence. Appellee filed its Answer on February 5, 2015. On March 25, 2015, Appellee submitted an Offer of Judgment in the amount of $500.00 pursuant to Tennessee Rule of Civil Procedure 68, and a settlement offer of $3,500.00, both of which Appellants rejected.

On January 15, 2016, Appellants filed a Motion for Sanctions related to alleged discovery abuses by Appellee. By order of February 29, 2016, the trial court ordered that it would issue a modified jury instruction at the final trial as a remedy.

On December 8, 2016, Appellee filed a Motion for Summary Judgment as to all of Appellants' claims. Appellants filed their response on December 30, 2016. By order of January 27, 2017, the trial court denied Appellee's Motion for Summary Judgment in its entirety. However, by order of March 28, 2017, the trial court partially reversed its January 27, 2017 order and granted Appellee's Motion for Summary Judgment as to

---

[2] Appellants did not sue Ms. Adams.

Appellants' TITDA claim.

On April 17, 2017, the parties tried the remaining claims, and the jury returned a verdict in favor of Appellee. On May 1, 2017, the trial court entered the final judgment, and the case was dismissed on its merits. On May 30, 2017, Appellee filed its motion for discretionary costs and its motion for costs and attorney's fees. By order of August 8, 2017, the trial court granted, in part, Appellee's motion for discretionary costs but denied Appellee's motion for costs and attorney's fees.

## II. Issues

Appellants raise three issues on appeal:

1. Whether the trial court erred in granting summary judgment to Appellee with regard to Appellants' claim arising under the Tennessee Identity Theft Deterrence Act.

2. Whether the trial court abused its discretion in failing to impose a sufficient sanction on Appellee for its spoliation of critical evidence.

3. Whether Appellants are entitled to attorney's fees incurred on appeal.

Appellee raises one issue on appeal:

1. Whether the trial court erred as a matter of law by failing to award costs, including reasonable attorney's fees, to Ernst-Western after the trial court entered a take-nothing judgment that was less favorable than the Offer of Judgment Ernst-Western propounded in a TCPA/TITDA lawsuit pursuant to Tennessee Rule of Civil Procedure 68.

## III. Analysis

### A. Grant of Summary Judgment on TITDA Claim

Appellants appeal the grant of summary judgment on their TITDA claim. A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps***., 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.

The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "When a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co.,*** [***Ltd. v. Zenith Radio Corp***.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye***, 477 S.W.3d at 265.

> In relevant part, the TITDA provides that
> [i]t is unlawful for any person to directly or indirectly:
>
> > (1) Engage in identity theft; or
> >
> > (2) Engage in any unfair, deceptive, misleading act or practice for the purpose of directly or indirectly engaging in identity theft.

Tenn. Code Ann. § 47-18-2103. Identity theft is defined as

> (A) Obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, for unlawful economic benefit, one (1) or more identification documents or personal identification numbers of another person; or
>
> (B) Otherwise obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, for unlawful economic benefit, one (1) or more financial documents of another person;

Tenn. Code Ann. § 47-18-2102(8). For the purpose of the TITDA, "financial documents" include credit cards. Tenn. Code Ann. § 47-18-2102(6).

Appellants allege that Appellee engaged in identity theft when it charged Mrs. Groves' credit card for Ms. Adams' entire hotel stay. The trial court incorporated the transcript of its oral statements from the summary judgment hearing into its order granting summary judgment on the TITDA claim. In pertinent part, the transcript provides:

> [T]he transaction that was contemplated by Mrs. Groves was a charge on her card at Holiday Inn. She contemplated that. Now, what's in dispute here, is the amount. If the clerk had taken the card and run down to the convenient store and bought groceries with it, that's identity theft. That's taking it and using it, possessing it, for the purpose of some transaction Mrs. Groves didn't contemplate. But Mrs. Groves contemplated that her card would be charged by the Holiday Inn, we just have a disagreement over how much and whether or not that was correctly represented to you, right?
>
> ***
>
> . . . the issue here is was there a transaction that Mrs. Groves didn't contemplate with some third party, other than Holiday Inn. The answer to that is no. She gave them her card, they accepted it for payment. Right? And then she says I only let them charge one night or two nights, they say no. It was open ended. So really the dispute isn't over someone else using that card to buy groceries or NetFlix or something like that, it's a dispute with Holiday Inn. Both parties contemplated there was going to be a transaction between M[r]s. Groves and Holiday Inn.
>
> ***
>
> They didn't take [the credit card] from her wallet, and the clerk didn't keep it and go and use it somewhere else or keep it, go in the back room and go on Amazon and buy things. I would concede, if that had occurred, you got an identity theft. But here, there's not an identity theft case, there's just a dispute over how much they charged the card that she presented to them for payment.

Turning to the record, Appellee attached Ms. Adams' sworn affidavit as an exhibit to its motion for summary judgment. In the affidavit, Ms. Adams states, in relevant part:

***

7. When I attempted to rent the room, I was informed by the hotel that I needed to present a valid credit card. I did not have a valid credit card.

8. Because I could not afford the room, I called Mrs. Vickie Groves and asked her to help me, and explained to her that my daughter and I did not have anywhere to spend the night until our apartment was ready.

9. Mrs. Groves agreed to help me, and she came to the Hotel.

10. I did not know how long I would needed [sic] to stay at the Hotel, and I indicated that fact to Mrs. Groves and the hotel clerk. I hoped it would be brief, but there was never any agreement that the stay would be limited to only one or two nights.

11. Mrs. Groves gave permission to the Hotel to use her credit card for my stay. Mrs. Groves stated that I could use the card "for as long as" I needed to stay.

12. Mrs. Groves personally presented her credit card to the Hotel clerk.

13. Mrs. Groves gave permission [to] the Hotel to swipe her credit card.

14. Both Mrs. Groves and I signed the Guest Information and Reservation term sheet, which stated the payment method "Visa" ending in 7981.

15. The Reservation term sheet, signed by Mrs. Groves and me contained the following language "I agree my liability for this bill is not waived and agree to be held personally liable in the event that the indicated person, company or association fails to pay for any part of the full amount of the charges."

16. I also never told Mrs. Groves or the hotel that I was planning to pay the charges for the room in cash. In fact, Mrs. Groves was aware that I had no money and could not afford the room.

17. Mrs. Groves' last words to me were, "let me know if you need anything," and "whenever you finally check out, just let me know."

*\*\**

Also attached as an exhibit to Appellee's motion are Appellants' responses to Appellee's first set of requests for admissions, wherein Mrs. Groves admits that "on April 2, 2014, [she] personally presented [her] credit card, a Visa, ending in 7981 to the clerk at the

front desk of Holiday Inn Express in Hendersonville," and that she "allowed Holiday Inn Express to swipe [her] credit card ending in 7981." Additionally, Appellee attached, as an exhibit to its motion for summary judgment, the reservation sheet for April 2, 2014 which: (1) states that the payment method for the room was a Visa ending in 7981; (2) contains the "guest initials" of "TA;" and (3) is signed by both Mrs. Groves and Ms. Adams.

There can be no dispute that Mrs. Groves presented her credit card to Appellee. Mrs. Groves admits this. Therefore, Appellee did not fraudulently obtain Mrs. Groves' credit card. The dispute, as the trial court explained, is over the amount charged to Mrs. Groves' credit card. Additionally, Appellee did not use Mrs. Groves' credit card for an "unlawful economic benefit." Tenn. Code Ann. § 47-18-2102(8). Appellee provided its hotel services in exchange for payment via Mrs. Groves' credit card.

In support of its TITDA claim, Appellants cite two unreported memorandum opinions from Judge William Haynes, Jr. from the Middle District of Tennessee regarding *Permobil, Inc. v. GMRI, Inc.*, No. 3:09-01145, 2010 WL 4704424 (M.D. Tenn. Nov. 12, 2010) ("*Permobil I*") and *Permobil, Inc. v. GMRI, Inc.*, No. 3:09-01145, 2011 WL 441397 (M.D. Tenn. Feb. 8, 2011) ("*Permobil II*") (together "*Permobil*").[3] While Appellants rely on *Permobil* to demonstrate that Appellee violated the TITDA, the facts of *Permobil* are easily distinguishable from this case. In *Permobil*, Jennifer Haney, an employee of Permobil, improperly obtained Charles Combs's company issued credit card after Mr. Combs was terminated. *Permobil, Inc.*, 2010 WL 4704424, at *1. After obtaining the credit card, Mrs. Haney and her husband, Johnny Haney, gained an unlawful economic benefit by using it at several of the Defendants' restaurants. *Id.* Permobil sued Defendants, in part, under the TITDA alleging that "Johnny Haney left very large tips, regularly exceeding 50% of the bill and often exceeding 100% of the bill, in exchange for receiving cash from the Defendants for use of Permobil's AMEX card . . ." and "Defendants were aware or should have been aware that in such circumstances, Johnny Haney was unlawfully using Permobil's credit card and Defendants failed to notify Permobil of Haney's fraudulent activity." *Id.* Permobil did not present its company credit card to Mrs. Haney for her use, nor did it authorize the use of the card at Defendants' restaurants. Permobil was unaware that the Haneys were using the credit card. In the case at bar, Mrs. Groves presented her credit card to the Appellee hotel and authorized the swiping of her credit card making this case factually distinguishable from

---

[3] We are cognizant that Rule 10 of the Rules of the Court of Appeals of Tennessee does not permit this Court to cite memorandum opinions for any reason in an unrelated case. Tenn. Ct. App. R. 10. However, Federal Rule of Appellate Procedure 32.1 states that "a court may not prohibit . . . the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been . . . designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent' or the like . . . ." Fed. R. App. P. 32.1. Therefore, we cite and discuss *Permobil* because Appellants argue that it is persuasive.

*Permobil*.[4]

### B. Spoliation of Evidence

Regarding our standard of review concerning discovery sanctions, we have stated:

> This Court reviews a trial court's choice and imposition of discovery sanctions under an abuse of discretion standard. ***Pegues v. Ill. Cent. R.R. Co.***, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008) (citing ***Alexander v. Jackson Radiology Assocs.***, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)). "An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party." ***Id.*** (citing ***Mercer v. Vanderbilt Univ., Inc.***, 134 S.W.3d 121, 131 (Tenn. 2004)). The abuse of discretion standard does not allow this Court to substitute the panel's judgment for the judgment of the trial court. ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003) (citation omitted). We will reverse a trial court's decision to impose sanctions only if the court "has acted unreasonably, arbitrarily, or unconscionably." ***Hodges v. Attorney General***, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000).

***Langlois v. Energy Automation Sys., Inc.***, 332 S.W.3d 353, 356 (Tenn. Ct. App. 2009).

Appellants allege that the trial court failed to impose a sufficiently harsh sanction for Appellee's failure to disclose 25 pages of its "User Activity Log" during discovery. Tennessee Rule of Civil Procedure 34A.02 provides:

> Rule 37 sanctions may be imposed upon a party or an agent of a party who discards, destroys, mutilates, alters, or conceals evidence.

Tenn. R. Civ. P. 34A.02. Tennessee Rule of Civil Procedure 37 sanctions include, but are not limited to: (1) the trial court designating facts as established; (2) the trial court

---

[4] It should be noted that ***Permobil I*** concerned a motion for judgment on the pleadings. Permobil argued that Defendants "concealed their involvement in the fraud and identity theft perpetrated by the Haneys" and that "Defendants' failure to inform [Permobil] of Johnny Haney's fraudulent activity is equivalent to 'concealing the liability' under [T]ITDA." ***Permobil, Inc.***, 2010 WL 4704424, at *3. The district court found that the alleged facts "could give rise to a finding of the Defendants' concealment of those transactions" and that the issue could not be decided on a motion for judgment on the pleadings. ***Id.*** at *4. The district court did not make a determination that the alleged facts violated the TITDA. Similarly, ***Permobil II*** concerned Defendants' motion for summary judgment, in part, as to Permobil's TITDA claims which the district court denied. Again, the district court did not make a determination that the alleged facts violated the TITDA. ***Permobil, Inc.***, 2011 WL 441397, at *11.

refusing to allow the party being sanctioned to support or oppose designated claims or defenses; and (3) striking pleadings or rendering a default judgment against the offending party. Tenn. R. Civ. P. 37.02.

In ***Tatham v. Bridgestone Ams. Holding, Inc.***, 473 S.W.3d 734 (Tenn. 2015), the Tennessee Supreme Court discussed sanctions for spoliation of evidence, stating:

> In light of both [Tennessee] Rule [of Civil Procedure] 34A.02 and the long-standing recognition discussed herein of a trial court's inherent authority and wide discretion in imposing sanctions to ensure fundamental fairness and the proper administration of justice, we hold that intentional misconduct is not a prerequisite for a trial court to impose sanctions for the spoliation of evidence, including that of a negative inference. Indeed, while in the past under the common law doctrine of spoliation, there clearly was a prerequisite of intentional misconduct for a trial court to impose the specific sanction of a negative inference against the spoliating party, we see no reason to continue the requirement of intentional misconduct for the imposition of sanctions for the spoliation of evidence whether the sanction be imposed under the common law doctrine, under the inherent authority of the court, or under Rule 34A.02. We hold today that the analysis for the possible imposition of any sanction for the spoliation of evidence should be based upon a consideration of the totality of the circumstances. To adopt an inflexible, bright-line rule restricting a trial court's power to fashion the appropriate remedy for spoliation of evidence would be contrary to the trial court's inherent authority to sanction abuses of the discovery process and to remedy the potential prejudice caused thereby. Therefore, intentional misconduct should not be a prerequisite to the imposition of some sanction under any approach. Rather, such determinations should be made on a case-by-case basis considering all relevant circumstances. Whether the conduct involved intentional misconduct simply should be one of the factors considered by the trial court.

> The decision to impose sanctions for the spoliation of evidence is within the wide discretion of the trial court. The determination of whether a sanction should be imposed for the spoliation of evidence necessarily depends upon the unique circumstances of each case. Factors which are relevant to a trial court's consideration of what, if any, sanction should be imposed for the spoliation of evidence include:

> > (1) the culpability of the spoliating party in causing the

- 9 -

destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;

(2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence;

(3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and

(4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party.

*Tatham*, 473 S.W.3d at 746-47.

As noted in *Tatham*, the imposition of discovery sanctions is largely left to the trial court's discretion. In its order granting the discovery sanction in this case, the trial court states

. . . that regarding Defendant's Motion for Protective Order and Plaintiffs' Motion for Sanctions, the [c]ourt will issue pursuant to T.R.C.P. 34 and T.R.C.P. 37, a modified version of Tennessee Proposed Pattern Jury Instruction 2.04 as a jury instruction concerning the "User Activity Log" that is the subject of these Motions, unless the document is electronically recovered, and if this case is submitted to a jury.

We glean from the order that the trial court found that the "User Activity Log" should have been submitted. However, as to the specific basis for this finding, the record is too sparse to allow meaningful review. Although the record contains a transcript of the hearing on the motion for sanctions, it is comprised entirely of oral arguments from counsel, which are not evidence. *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn. Crim. App. 1974) (holding that statements made by counsel during the course of a hearing, trial, or argument are not evidence). Accordingly, we cannot review whether Appellee's failure to proffer the "User Activity Log" was intentional or whether its absence caused Appellant prejudice. Regardless, from the record, the trial court determined that a modified jury instruction was warranted. To that end, the trial court modified Tennessee Pattern Jury Instruction 2.04, which, in original form, allowed the jury to conclude that the missing evidence may be adverse to the party who failed to offer it only if the jury found certain enumerated criteria. In this case, the trial court modified the instruction to eliminate the jury's consideration of the enumerated criteria and strictly mandated an adverse inference against Appellee due to its failure to provide the "User Activity Log."

Again, the type of discovery abuse sanction is largely left to the trial judge, and

this Court will not reverse the trial court absent an abuse of discretion. Furthermore, under **Tatham**, the trial court is charged to impose the "least severe sanction available." **Tatham**, 473 S.W.3d at 747. In the absence of sufficient evidence of intentional spoliation on Appellee's part or prejudice against Appellants, we cannot conclude that the trial court's modification of TPI 2.04 was too lenient or that the court otherwise abused its discretion in levying this particular sanction.

## C. Attorneys' Fees

Appellee appeals the trial court's denial of attorney's fees pursuant to Tennessee Rule of Civil Procedure 68. This issue requires us to interpret a rule of civil procedure. We must apply the "same principles of statutory construction and the same standard of review," as required when interpreting a statute. **In re Baby**, 447 S.W.3d 807, 818 (Tenn. 2014) (citing **Lind v. Beaman Dodge, Inc.**, 356 S.W.3d 889, 895 (Tenn. 2011)). Thus, we review the trial court's conclusions *de novo*, with no presumption of correctness. **State v. Edmondson**, 231 S.W.3d 925, 927 (Tenn. 2007). According to the Tennessee Supreme Court:

> When interpreting statutes [and rules], our primary function is to carry out legislative intent without broadening the statute beyond its intended scope. **Houghton v. Aramark Educ. Res., Inc.**, 90 S.W.3d 676, 678 (Tenn. 2002). When a statute is clear, courts simply apply the plain meaning without complicating the task. **Eastman Chem. Co. v. Johnson**, 151 S.W.3d 503, 507 (Tenn. 2004). "When a statute [or rule] is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources." **Colonial Pipeline Co. v. Morgan**, 263 S.W.3d 827, 836 (Tenn. 2008). We must presume that every word in a statute has meaning and purpose and should be given full effect so long as the obvious intention of the General Assembly is not violated by doing so. **In re C.K.G.**, 173 S.W.3d 714, 722 (Tenn. 2005) (quoting **Marsh v. Henderson**, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968)). "[A] construction which places one statute in conflict with another is to be avoided, and we must endeavor to resolve any possible conflict between statutes in favor of each other in order to provide a harmonious operation of laws." **Lovlace v. Copley**, 418 S.W.3d 1, 20 (Tenn. 2013) (**Graham v. Caples**, 325 S.W.3d 578, 582 (Tenn. 2010)).

**In re Baby**, 447 S.W.3d at 817-18.

Appellee argues it is entitled to attorney's fees pursuant to Tennessee Rule of Civil Procedure 68, the TITDA, and the TCPA. Tennessee Rule of Civil Procedure 68 states:

At any time more than 10 days before the trial begins, a party defending

against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property, or to the effect specified in the offer, with costs then accrued. Likewise a party prosecuting a claim may serve upon the adverse party an offer to allow judgment to be taken against that adverse party for the money or property or to the effect specified in the offer with costs then accrued. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may file the offer and notice of acceptance, together with proof of service thereof, with the court and thereupon judgment shall be rendered accordingly. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay all costs accruing after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer.

Tenn. R. Civ. P. 68. The trial court denied Appellee's post-trial motion for costs and attorney's fees pursuant to Rule 68 but granted, in part, Appellee's post-trial motion for discretionary costs, ordering Appellants to pay Appellee's $275.00 *per diem* costs for the court reporter pursuant to Tennessee Rule of Civil Procedure 54.04(2).[5] Appellee extended an offer of judgment for $500.00 on March 25, 2015. Appellants rejected the offer. Subsequently, the jury rendered a take nothing-verdict for Appellants, a judgment that was not more favorable than Appellee's offer of judgment. All of the requirements of Rule 68 were met, yet the trial court did not award Appellee its costs. This was error. The language of Rule 68 is mandatory, not permissive, in that an "offeree *shall* pay costs accruing after the making of the offer." Tenn. R. Civ. P. 68 (emphasis added). However, the "costs" in Rule 68 are only "costs taxed by the Clerk of the Court" and do not include attorney's fees as Appellee argues. **Person v. Fletcher**, 582 S.W.2d 765, 766-67 (Tenn. Ct. App. 1979). In **Person**, this Court specifically stated that "no statute authorizes attorneys' fees to be included as costs . . . ." **Id.** at 767.[6] Therefore, we reverse the trial

---

[5] Tennessee Rule of Civil Procedure 54.04(2) states, in part:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees not paid pursuant to Tennessee Supreme Court Rule 42, and guardian ad litem fees; travel expenses are not allowable discretionary costs. . . .

Tenn. R. Civ. P. 54.04

[6] Appellee essentially argues that this Court should follow the federal rule and federal case law, which allow the award of attorneys' fees pursuant to Federal Rule of Civil Procedure 68 when the underlying statute on which the plaintiff brings its case allows for the recovery of attorney's fees. *See*

court's denial of costs taxed by the Clerk of Court but affirm the trial court's denial of attorney's fees.

Appellants argue they should be awarded attorney's fees and costs pursuant to the TCPA and/or the TITDA.  A party is only entitled to attorney's fees with regard to these Acts when the party prevails at trial or on appeal.  Tenn. Code Ann. § 47-18-109(e)(1); Tenn. Code Ann. § 47-18-2104(g).  Here, Appellants have not prevailed on either claim.  Therefore, we decline to grant Appellants' request for attorney's fees.

## IV.  Conclusion

For the foregoing reasons, we reverse the trial court's denial of Appellee's costs under Tennessee Rule of Civil Procedure 68 but otherwise affirm the order.  The case is remanded for determination of costs and for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed against the Appellants, Vickie Groves, Charles Groves, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

---

*Jordan v. CSX Transp., Inc.*, No. M1999-01415-COA-R3-CV, 2001 WL 378555, at *8 (Tenn. Ct. App. Apr. 17, 2001) for a discussion on the same.  However, Tennessee case law has not taken this approach, and we decline to adopt it now.