# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 11, 2019 Session

## LOIS IRENE DAVIS ET AL. v. 3M COMPANY ET AL.

**Appeal from the Circuit Court for Maury County**
**No. 15734     Robert E. Lee Davies, Senior Judge**

_____

### No. M2018-02029-COA-R3-CV

_____

In this wrongful death action, the plaintiff, the decedent's spouse, asserted claims against multiple defendants.  The plaintiff settled with all but one of the defendants prior to trial, and the settling defendants were dismissed from the case.  At trial, the sole remaining defendant asserted the comparative fault of the decedent and the settling defendants.  The jury assigned percentages of fault to the decedent, the defendant, and the settling defendants but returned a verdict in favor of the plaintiff.  The jury found noneconomic damages that, when reduced by the percentage of the decedent's fault, exceeded the statutory cap.  So the trial court entered a judgment against the defendant based on its percentage fault as applied to the statutory cap.  On appeal, the plaintiff argues that the statutory cap was incorrectly applied.  We affirm.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Gibbs C. Henderson, Dallas, Texas, and R. Holland Matthews, Columbia, Tennessee, for the appellant, Lois Irene Davis, individually and as Personal Representative of the Estate of James William Davis.

Robert L. Byer, Andrew R. Sperl, and John E. Moriarty, Philadelphia, Pennsylvania, and Lauren Paxton Roberts and Annie J. Tipps, Nashville, Tennessee, for the appellee, Ameron International Corporation.

# OPINION

## I.

James William Davis and his wife, Lois Irene Davis, sued claiming that exposure to asbestos-containing materials at Mr. Davis's workplace caused him to develop mesothelioma. The Davises named several defendants who they claimed "engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products."

Following Mr. Davis's death, Mrs. Davis amended the complaint to pursue the case as a wrongful death action. *See* Tenn. Code Ann. § 20-5-106(a) (Supp. 2019) (passing right of action of a person who dies to the person's surviving spouse). The amended complaint also omitted some of the original defendants, either because they had been granted summary judgment or reached a settlement with the Davises. Still the first amended complaint named 11 defendants.

After further settlement discussions, Mrs. Davis resolved her claims against all defendants save one, Ameron International Corporation. In anticipation of being the only defendant in the case, Ameron filed a "Motion for Clarification re Application of Statutory Cap." *See* Tenn. Code Ann. § 29-39-102 (2012). According to the motion, Ameron and Mrs. Davis had "divergent views on how the statutory cap [on noneconomic damages] applies here" and "[t]he parties should go into trial understanding the true risks and rewards they are facing." Ameron alleged comparative fault on the part of a) Mr. Davis and b) entities that either were or were soon to be former, co-defendants. And it anticipated that the settling co-defendants, despite being dismissed from the case, would remain on the verdict form. So Ameron wanted Mrs. Davis to "understand[ ] . . . that, assuming settling codefendants are on the verdict form, that $750,000 maximum will be apportioned among the defendants on the verdict form, with Ameron paying only its percentage, if any, of the capped noneconomic damages."

Although stating that it disagreed with Ameron's approach to the statutory cap, the court held that, if after reducing an award of noneconomic damages by Mr. Davis's percentage fault the award still exceeded the statutory cap, it would "reduce the award further to comport with the cap based upon each party's percentage of fault." The court provided an example of its approach in which fault was assigned to Mr. Davis, Ameron, and two "defendants," but when the order was entered, the only remaining defendant was Ameron.

The court's order caused Mrs. Davis to move for further clarification. Specifically, Mrs. Davis wanted "clarification on the issue of whether settled parties no

longer in this lawsuit are 'nonparties' or 'Defendants' for the purposes of the Court's analysis of the Tennessee damages cap." The court did not rule on Mrs. Davis's motion.

The court conducted a jury trial. And the jury returned a verdict in favor of Mrs. Davis and found damages of $2,071,216.21, which included noneconomic damages of $1,950,000. The jury found Mr. Davis 2% and Ameron 13% at fault. The remaining 85% of fault was allocated among eight other entities that had been named as defendants in either the original or amended complaint.

After the verdict was read, the court instructed counsel for Mrs. Davis to prepare a proposed judgment. Counsel prepared a proposed judgment against Ameron for $269,258.11, which was 13% of the total damages found by the jury. Mrs. Davis contended that the statutory cap did not apply in this instance "[b]ecause the total amount of damages apportioned to Ameron, the only remaining Defendant, was less than $750,000."

Ameron objected to the proposed judgment. Ameron agreed that it was liable for 13% of the economic damages found by the jury. But it contended that the statutory cap applied to the noneconomic damages because, after reducing the $1,950,000 by the percentage of Mr. Davis's fault, the amount exceeded the $750,000 statutory cap. For noneconomic damages, Ameron proposed that it should be liable for a percentage of the cap amount equal to its "share of the total of all the defendants' share of fault." It expressed its liability in the following equation: $750,000 x 13 (Ameron's fault) ÷ 98 (total fault of all defendants) = $99,489.80.

The trial court's final judgment adopted Ameron's approach. The court ordered that Mrs. Davis would recover from Ameron $15,758.11 in economic damages and $99,489.80 in non-economic damages for a total judgment of $115,247.91.

## II.

On appeal, Mrs. Davis raises a single issue: "did the trial court err by applying the statutory damages cap to Appellant's award of non-economic damages prior to apportioning fault?" As she did in the trial court, she argues that the statutory damages cap was inapplicable "because Ameron's 13% share of the total damages was well below $750,000."

Applying the statutory cap on noneconomic damages to the jury's findings of liability and damages necessitates interpretation of the statute. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 53 (2012) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). Statutory interpretation is a question of law, which we review de novo, with no presumption of correctness given to the court below. *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003).

3

When called upon to answer a question of statutory interpretation, the objective, "if possible, [is to] give effect to the intention or purpose of the legislature as expressed in the statute." *Metro. Gov't of Nashville & Davidson Cty. v. Motel Sys., Inc.*, 525 S.W.2d 840, 841 (Tenn. 1975). Intention or purpose is derived "from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Id.*; *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). If the language is unambiguous, we "simply . . . enforce the written language." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *see also Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014); *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). If ambiguous, we turn to the broader statutory scheme, legislative history, or other sources for clarity in meaning. *Thurmond*, 433 S.W.3d at 517; *Lind*, 356 S.W.3d at 895.

Tennessee Code Annotated § 29-39-102 sets a cap on the noneconomic damages that each injured plaintiff may recover in a civil tort action. The pertinent language of the statute states:

(a) In a civil action, each injured plaintiff may be awarded:

(1) Compensation for economic damages suffered by each injured plaintiff; and

(2) Compensation for any noneconomic damages suffered by each injured plaintiff not to exceed seven hundred fifty thousand dollars ($750,000) for all injuries and occurrences that were or could have been asserted, regardless of whether the action is based on a single act or omission or a series of acts or omissions that allegedly caused the injuries or death.

(b) If multiple defendants are found liable under the principle of comparative fault, the amount of all noneconomic damages, not to exceed seven hundred fifty thousand dollars ($750,000) for each injured plaintiff, shall be apportioned among the defendants based upon the percentage of fault for each defendant, so long as the plaintiff's comparative fault (or in a wrongful death action, the fault of the decedent) is not equal to or greater than fifty percent (50%), in which case recovery for any damages is barred.

Tenn. Code Ann. § 29-39-102.

4

Here, the jury found noneconomic damages of $1,950,000. Although the noneconomic damages included various elements,[1] the parties agree that noneconomic damages should be treated as a whole for purposes of applying the statutory cap.[2] The parties also agree that the noneconomic damages must be reduced by the percentage of fault assigned to Mr. Davis. *See Monypeny v. Kheiv*, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at *26 (Tenn. Ct. App. Apr. 1, 2015) (holding "that, in personal injury cases, the trial court should first reduce the jury's award of non-economic damages by the percentage of comparative fault, and then, if the adjusted award is still above the statutory cap, the court should reduce the award further to comport with the cap"). The parties differ on whether the noneconomic damages should be reduced further before applying the statutory cap.

Mrs. Davis contends that the noneconomic damages should be reduced by "the fault of all other entities" save that of the one remaining defendant, Ameron. She points to the language of the statutory cap statute and one of our cases interpreting the statute as supporting that approach. Reducing noneconomic damages both by the 2% fault attributed to Mr. Davis and the 85% fault attributed to the entities no longer party to the action reduces noneconomic damages to $253,500. This represents 13% of the noneconomic damages found by the jury, the percentage of fault allocated to Ameron. Because Ameron's share of the noneconomic damages based on its allocation of fault

---

[1] The jury's verdict broke down the noneconomic damages as follows:

a. Mr. Davis' Physical Pain and Suffering
(from diagnosis to death): $200,000.00
b. Mr. Davis' Emotional Pain and Suffering
(from diagnosis to death): $300,000.00
c. Mr. Davis' Loss of Ability to Enjoy Life
(from diagnosis to death): $150,000.00
d. Lois Irene Davis for Loss of Consortium
damages (from diagnosis to death): $300,000.00

Pecuniary Value of the Life of James Williams Davis

a. Loss of the adult children of the love, society
and companionship of their father $300,000.00
b. Loss of Lois Irene Davis of the love, society,
and companionship of her husband $700,000.00

[2] Although Mrs. Davis alleged that she brought the first amended complaint in her individual capacity and as personal representative of Mr. Davis's estate, "in filing a wrongful death lawsuit, the surviving spouse does not represent the decedent but instead asserts the spouse's own right of action." *Beard v. Branson*, 528 S.W.3d 487, 502 (Tenn. 2017); *see also* Tenn. Code Ann. § 29-39-102(e) (limiting "[a]ll noneconomic damages awarded to each injured plaintiff, including damages for pain and suffering, as well as any claims of a spouse or children for loss of consortium or any derivative claim for noneconomic damages," to $750,000).

5

would be less than $750,000, Mrs. Davis submits that the statutory cap did not apply in this case.

Ameron contends that the statutory cap should be applied before apportioning its fault or the fault of anyone other than Mr. Davis. It likewise submits that its approach is supported by the language of the statute and our prior interpretation of the statute.

As noted above, in subsection (b), the statute provides that, if "multiple defendants are found liable under the principle of comparative fault, the amount of all noneconomic damages, not to exceed seven hundred fifty thousand dollars ($750,000) for each injured plaintiff, shall be apportioned among the defendants based upon the percentage of fault for each defendant." Tenn. Code Ann. § 29-39-102(b). Subsection (b) would seemingly resolve the issue presented here in favor of Ameron. Not so according to Mrs. Davis because multiple defendants were not found liable under the principle of comparative fault. By the time of trial, only one defendant remained. So she contends that subsection (b) is inapplicable to cases in which there is only one defendant.

Mrs. Davis argues further that the statutory cap is designed to limit amounts an "injured plaintiff may be awarded." *Id.* § 29-39-102(a). "Award" refers to something granted by judicial decree. *See Award*, BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, the statutory cap only applies "when the 'award' to the plaintiff would exceed $750,000." Applying Ameron's percentage fault to the noneconomic damages found by the jury would result in an award of less than $750,000.

The upshot of Mrs. Davis's arguments is that the statutory cap works differently depending on whether an injured plaintiff decides to name all tortfeasors as defendants. If one defendant is named, the defendant could be liable for $750,000 of noneconomic damages even if fault was allocated to non-parties. If more than one at-fault party is named as a defendant, apportionment of the liability would mean that no one defendant could be liable for the cap amount.

We decline to adopt Mrs. Davis's interpretation of the statute. Although we agree that subsection (b) addresses a circumstance not present here, it still aids in the resolution of the issue before us by analogy. Under subsection (b), the plaintiff's comparative fault, or that of the decedent in a wrongful death case, is considered prior to application of the statutory cap. Tenn. Code Ann. § 29-39-102(b). The plaintiff's negligence must "not [be] equal to or greater than fifty percent (50%)." *Id.* If the plaintiff's negligence is equal to or greater than 50%, plaintiff's "recovery for any damages is barred." *Id.* This statement merely relates the doctrine of comparative fault as adopted in Tennessee. *See McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992).

The remainder of subsection (b) addresses apportionment of fault among multiple, liable defendants. Noneconomic damages, up to the amount of the statutory cap, are

6

apportioned among all the liable defendants. Tenn. Code Ann. § 29-39-102(b). By implication then, the amount of noneconomic damages must be reduced by the fault, if any, of the plaintiff before application of the cap. So, as we have previously held, "the trial court should first reduce the jury's award of non-economic damages by the percentage of [the plaintiff's] comparative fault, and then, if the adjusted award is still above the statutory cap, the court should reduce the award further to comport with the cap." *Monypeny*, 2015 WL 1541333, at *26. The lesser of the award adjusted for the plaintiff's fault or the statutory cap amount becomes the amount to apportion among the "multiple defendants . . . found liable."

Of course, even when only one defendant is named, the defendant may "allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought," and if negligence is proven, the jury may "assign this nonparty the percentage of the total negligence for which he is responsible." *McIntyre*, 833 S.W.2d at 58. We do not read subjection (b) as limiting its approach to only cases involving "multiple defendants." Subsection (b) also includes the only reference in the statute to "the plaintiff's comparative fault." But no serious argument could be made that the Legislature intended to eliminate consideration of a plaintiff's fault to only cases involving multiple defendants.

Using subsection (b) as our guide, we conclude that the trial court should first reduce the jury's award of noneconomic damages by the percentage of plaintiff's fault if less than 50%. If the award of noneconomic damages adjusted for the plaintiff's fault still exceeds the statutory cap, the court should reduce the award to the cap amount and apportion the amount among the persons or entities found at fault (other than the plaintiff) based upon the percentage of fault for each.

Here, the trial court correctly reduced the noneconomic damages adjusted for the decedent's fault to the statutory cap amount before apportioning the damages among the entities found at fault for the injuries. Consistent with the doctrine of comparative fault, the court then appropriately apportioned the statutory cap amount among Ameron and the nonparties that caused or contributed to the injuries.[3]

---

[3] We note that the court did not apportion fault among the at-fault entities based on the percentage fault found by the jury. Instead, the court employed a formula that resulted in Ameron being responsible for slightly more of the cap amount than its percentage fault, 13.26% versus 13%. But Ameron does not raise this error as an issue on appeal.

7

## III.

For the foregoing reasons, we affirm the judgment of the trial court.  The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MᴄBRAYER, JUDGE