# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 24, 2021 Session

## SAM B. CRENSHAW v. SAAD KADO ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 198261-2          Clarence E. Pridemore, Jr., Chancellor**

_____

### No. E2020-00282-COA-R3-CV
_____

This appeal concerns a foreclosure sale of the plaintiff's property. The defendants filed motions to dismiss the plaintiff's action alleging, in part, that the action violated the statute of limitations. In response, the plaintiff alleged that his action was timely due to equitable estoppel. The Trial Court granted the defendants' motions and dismissed all of the plaintiff's claims against the defendants. Taking the facts alleged in the plaintiff's complaint as true, the plaintiff pled sufficient facts in his complaint to support a claim of equitable estoppel for purposes of the statute of limitations. Therefore, we hold that the Trial Court erred by granting the defendants' motions to dismiss filed pursuant to Tennessee Rule of Civil Procedure 12.02(6).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Matthew A. Grossman, Knoxville, Tennessee, for the appellant, Sam B. Crenshaw.

Shaun K. Ramey and Joseph V. Ronderos, Nashville, Tennessee, for the appellees, Wells Fargo Bank, N.A., as trustee for Option One Mortgage Loan Trust 2005-3 Asset Backed Certificates, Series 2005-3; PHH Mortgage Corporation, as successor by merger to Ocwen Loan Servicing, LLC, and successor by merger to Homeward Residential, Inc. (formerly known as American Home Mortgage Servicing, Inc.); and Sand Canyon Corporation (formerly known as Option One Mortgage Corporation).

Melanie E. Davis, Maryville, Tennessee, for the appellee, Saad Kado.

## OPINION

## Background

Sam B. Crenshaw ("Plaintiff") and Daphne J. Lindsey (collectively, "Borrowers") obtained title to the property at issue located in Knoxville, Tennessee (the "Property") by warranty deed in May 2005 as tenants in common with rights of survivorship. On the same day, Borrowers executed two deeds of trust in favor of Priority Trustee Services of Tennessee, LLC, as trustee for the benefit of the lender, Option One Mortgage Corporation. The deeds of trust were subsequently recorded with the Register of Deeds in Knox County. According to the first deed of trust, Borrowers owed $101,600 to the lender. The second deed of trust reflected that Borrowers owed $25,400 to the lender. In August 2007, a "Notice of Lien for Fine and/or Restitution" was executed concerning the Property, due to a fine or restitution from a judgment entered by the U.S. District Court in the Eastern District of Tennessee in July 2007.

Homeward Residential, Inc., (formerly American Home Mortgage Servicing, Inc.) ("Homeward") began servicing the loan in May 2008. In February 2009, Wells Fargo Bank, N.A., as trustee for Option One Mortgage Loan Trust 2005-3 Asset Backed Certificates, Series 2005-3, ("Wells Fargo") appointed Nationwide Trustee Services, Inc., as substitute trustee with respect to the first deed of trust. A foreclosure sale occurred in March 2009 but was rescinded in April 2009 in order to "allow for a loss mitigation review," according to a letter sent to the Tennessee Attorney General's Office in October 2013 by Nena Kamman, a representative of Ocwen Loan Servicing, LLC ("Ocwen"). In August 2009, Borrowers executed a "Security Retention Agreement" that had been provided to them by Homeward, that had an effective date of September 1, 2009. This agreement modified Borrowers' monthly payment and balloon payment. Plaintiff made payments with respect to the first deed of trust, consistent with the 2009 Modification Agreement, which Homeward accepted.

Ms. Kamman's October 2013 letter, which was attached to the complaint as an exhibit, explained that the 2009 loan modification was reversed in September 2009 "due to an error in calculating the loan modification by not including the 2009 foreclosure attorney's fees and costs." The loan was not immediately returned to a foreclosure status but placed "in a special status" to allow them to work on a replacement loan modification. Plaintiff was informed that the 2009 loan modification was not completed in March 2010. In June 2011, Wells Fargo again appointed Nationwide Trustee Services, Inc., as substitute trustee with respect to the first deed of trust. According to Ms. Kamman's letter, the loan was referred to foreclosure again, but the foreclosure was placed on hold in July 2011 to allow them to work on a replacement loan modification.

In September 2011, Plaintiff was provided with a replacement loan modification agreement with comparable rates to the 2009 loan modification. However, the 2011 replacement loan modification contained more attorney's fees and costs than the 2009 loan modification. According to Ms. Kamman's letter, the increased fees were the result of the original processor's failure to include the 2009 foreclosure expenses in the 2009 loan modification. Plaintiff disagreed with the foreclosure fees being included in the new loan modification and believed the loan already had been modified in 2009. A representative from Homeward advised Plaintiff that if they did not receive the executed 2011 Loan Modification Agreement by October 19, 2011, the modification would be denied. The documents were not received and the modification was denied. The payments made by Plaintiff after the reversal of the 2009 loan modification were placed in a "suspense account" while the loan was under review for the replacement loan modification. Those payments were later refunded to Plaintiff after the 2011 loan modification was not completed.

In July 2012, Homeward executed a document, on behalf of Wells Fargo, appointing Nationwide Trustee Services, Inc., for a third time as substitute trustee. The foreclosure sale had been scheduled in September 2012. However, Ms. Kamman's letter explained that due to Plaintiff's difficulties with the 2009 and 2011 loan modifications processes, Homeward placed a thirty-day hold on the foreclosure sale in order to allow Plaintiff time to submit a new loan modification application and would extend the hold for longer once an application was received. Plaintiff sent some items but a complete loan modification application was not received. Therefore, the foreclosure proceedings continued, and the Property was sold at a foreclosure sale. On November 29, 2012, Wells Fargo purchased the foreclosed Property, as evinced by a substitute trustee's deed which was recorded in December 2012.

Nena Kamman, a representative of Homeward Residential, Inc. at that time, sent an email in April 2013 to a representative of Ocwen Loan Servicing, LLC, after the account had been transferred to Ocwen in February 2013. In the email, Ms. Kamman recognized Homeward had completed a loan modification with Plaintiff and that Plaintiff had made payments toward that modification. However, she stated that there were errors in calculation that were made in the 2009 modification agreement. She accepted Homeward's responsibility for the failed modification. According to the email, an "HPO rep" contacted Plaintiff and got him approved for a new replacement modification but the costs and fees were "substantially higher" than the first modification, which Plaintiff believed was unfair. Plaintiff declined that modification, and his payments were returned to him "without explanation." She stated that Plaintiff "had been making the original mod[ification] payments and didn't fully understand what it meant that the mod[ification] had to be reworked or what it meant that [they] were returning his payments." The email further read that Plaintiff tried to figure out the situation and had hired an attorney who

successfully "stopped a previous foreclosure and had attorney's fees and costs removed from his account."

According to Ms. Kamman's email, the account remained in foreclosure but no foreclosure sale date was scheduled. Ms. Kamman stated that it appeared "Homeward dropped the ball in contacting [Plaintiff] and arranging a new mod[ification] with the original fees and costs amounts." Ms. Kamman's email stated that her supervisor at the time was an attorney and "believed that Homeward had made big enough mistakes in handling [Plaintiff's] loan modification that to prevent litigation that [they] might lose, [Homeward] should facilitate a modification." After Plaintiff had contacted them several times, Ms. Kamman's supervisor instructed her to review Plaintiff again for a loan modification with only the original fees and costs, for which Plaintiff was sending documentation to them. However, Plaintiff did not get the completed application to them before the foreclosure sale occurred in November 2012. In her email, Ms. Kamman acknowledged that she was unsure what Ocwen could do for Plaintiff at that point but stated that Homeward had been fulfilling a "pre-litigation function – trying to stop possible litigation by proactively addressing situations in which Homeward had liability." Ms. Kamman requested information from the Ocwen representative regarding whether Ocwen had a pre-litigation person within the Ocwen legal department. She requested the email recipient forward the email and attachments to "the appropriate person/department." According to Wells Fargo, Ms. Kamman's email was forwarded to Plaintiff on April 18, 2013, making him aware of the mistakes made with the foreclosure sale as of this date at the latest.

In August 2013, an attorney representing Wells Fargo sent a letter to Plaintiff, informing Plaintiff of the foreclosure sale and demanding immediate possession of the Property. Nena Kamman, who had by then become a representative of Ocwen Loan Servicing, LLC, wrote a letter in October 2013 to the Tennessee Attorney General's Office, which reflected that Plaintiff had requested rescission of the November 2012 foreclosure sale and a new loan modification concerning the Property. The October 2013 letter stated as follows concerning a resolution:

> Ocwen is willing to allow [Plaintiff] another opportunity to qualify for a loan modification. If Ocwen is able to approve a loan modification to replace the reversed 2009 and rejected 2011 Homeward loan modifications, Ocwen is willing to rescind the November 30, 2012 foreclosure sale. A copy of the loan modification application package is enclosed for your review and [Plaintiff's] use. He can submit a complete application package with supporting documentation to my attention in the Office of the Consumer Ombudsman at the mailing address listed below or to my facsimile number which is (***) ***-****. [Plaintiff] should submit a complete package within 30 days of this letter.

Approximately ten days after Ms. Kamman's letter, Borrowers received a letter from Ocwen Loan Servicing, LLC, that stated:

Dear Customer:

Thank you for your recent application for a modification under the Making Homes Affordable Program. Based on our review of the documentation you provided, you are not eligible for a Home Affordable Modification.

> **We are unable to offer you a Home Affordable Modification because: Your loan has undergone foreclosure and the property is currently being marketed for sale. Please contact our representatives to discuss the status of the property.**

However, despite the previous letter, Ocwen presented Plaintiff with a new loan modification agreement concerning the first deed of trust, which Plaintiff executed in January 2014. Plaintiff attached to his complaint a copy of this 2014 agreement reflecting his notarized signature. In the copy of the agreement attached to the complaint, the signature portion for Wells Fargo remained blank. The complaint states that Plaintiff subsequently made payments consistent with the 2014 loan modification, which Ocwen had accepted.

In April 2015, Ocwen sent to Plaintiff a "Pre-Foreclosure Referral" letter, which stated that the loan was past due and that the last full mortgage payment was made in June 2014. The letter reflects that the account was paid through December 2008, making the account due from January 2009. Because of past due mortgage payments, the letter informed Borrowers that they were in default of their loan agreement and that the Property may be referred to foreclosure after fourteen days.

In July 2015, Ms. Lindsey executed a quit claim deed conveying her interest in the Property to Plaintiff. In April 2016, Sand Canyon Corporation (formerly Option One Mortgage Corporation) assigned its interest in the 2005 deed of trust to Wells Fargo. Subsequently in June 2016, Wilson & Associates, PLLC, was appointed as substitute trustee with respect to the first deed of trust.

At some point prior to January 2016, Ocwen provided Plaintiff an additional loan modification package. As part of the package, a provision in the 2016 modification package requested Plaintiff to certify that there had been no change in ownership since the

loan documents were signed. Plaintiff subsequently received a letter from Raquel Rubens, a representative of Ocwen, in September 2016 that stated, in part:[1]

> Our records indicate a Trustee Sale for the above property was completed on November 29, 2012. However, due to difficulties you experienced during 2009 and 2011 modification review processes with Homeward, Ocwen reviewed the account for a possible rescission of the Trustee Sale. Please note that we did receive confirmation from counsel that the foreclosure sale that took place on November 29, 2012, was in fact rescinded. Due to the release of the Trustee Sale, this allowed you an opportunity to qualify for a modification on the account.

The September 2016 letter attached to the complaint further stated the rescission was contingent on Plaintiff submitting a completed "Request for Mortgage Assistance" packet, and the letter acknowledged receipt of Plaintiff's completed packet. The letter stated that Plaintiff was then required to complete an assumption to proceed with the modification in his name only. The letter stated that Plaintiff had completed an assumption application but that it was incomplete due to the missing quitclaim deed reflecting Ms. Lindsey's transfer of her interest to Plaintiff. The letter reflects that a fully-executed quit claim deed by Ms. Lindsey was submitted to Ocwen. The letter further stated that the January 2016 modification had not been approved because Ocwen "did not receive the initial trial payment within the required timeframe."

According to Plaintiff's complaint, Wells Fargo Bank, acting in its own name and not in a fiduciary capacity, obtained a detainer warrant in 2017 in the Knox County General Sessions Court, which was subsequently nonsuited. In April 2019, Wells Fargo conveyed the Property to Saad Kado by Special Warranty Deed, which was recorded with the Register of Deeds. Subsequently, Mr. Kado obtained issuance of a detainer warrant against Plaintiff, which was pending in the Knox County General Sessions Court at the time the complaint in this action was filed. In his complaint, Plaintiff stated, among other things, that he had lived on the Property without interruption and had made substantial improvements to the Property since execution of the initial warranty deed to the Property in May 2005.

Plaintiff filed his complaint on June 20, 2019 in the Knox County Chancery Court ("Trial Court") against Wells Fargo Bank, N.A. (a/k/a Wells Fargo Bank, National Association), as trustee for Option One Mortgage Loan Trust 2005-3, Asset-Backed Certificates, Series 2005-3; Nationwide Trustee Services, Inc., as substitute trustee; Ocwen Loan Servicing, LLC; Wilson & Associates, PLLC; Saad Kado; Westcor Land Title

---

[1] Plaintiff appears to have inconsistencies in his complaint as to the year of this letter, but the letter attached to the complaint reflects that the letter was sent in 2016.

Insurance Company; Sand Canyon Corporation (f/k/a Option One Mortgage Corporation); PHH Mortgage Corporation, as successor-by-merger with Homeward Residential, Inc. (f/k/a American Home Mortgage Servicing, Inc.); and the United States of America.[2] In his complaint, Plaintiff sought an injunction, declaratory relief invalidating recorded instruments, quiet title, and damages due to the "negligence, gross negligence, and/or recklessness" of the defendants, Wells Fargo; PHH Mortgage Corporation; and Sand Canyon Corporation ("Mortgagee Defendants"), "with respect to the servicing of the loan secured by the First Deed of Trust and collection of that debt."

In July 2019, Wilson & Associates filed a "Verified Denial and Answer." In August 2019, the United States of America filed an answer. Mortgagee Defendants filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), and a memorandum of law in support thereof in August 2019, arguing, in part, that Plaintiff's action was untimely and should be dismissed for failure to state a claim for which relief can be granted. According to Mortgagee Defendants, Plaintiff alleged that the foreclosure sale of the Property had been rescinded but had not alleged that a written or recorded instrument exists to rescind the foreclosure deed. Mortgagee Defendants averred that Plaintiff had received an email in 2013, more than six years prior to this action being filed, that detailed the alleged errors in the 2012 foreclosure process, putting Plaintiff on notice of the errors for which Plaintiff failed to take timely action. Additionally, Mortgagee Defendants argue that Plaintiff's claim for damages due to "negligent 'loan servicing and collection' for an alleged failure to rescind the Substitute Trustee's Deed (i.e. the foreclosure deed) and the events leading to the subsequent transfer" of the Property to the defendant, Saad Kado, "could only have arisen from the foreclosure sale in 2012," which occurred more than six years prior and, therefore, outside the six-year statute of limitations to rescind the deed and the three-year statute of limitations for tortious acts to property. Defendants also alleged that Plaintiff's claim of "negligent loan servicing and collection" should be dismissed because "no common law duty exists between a borrower and a loan servicer that may support his negligence claim." The defendant, Saad Kado, subsequently filed his motion to dismiss, incorporating by reference the arguments raised by the Mortgagee Defendants in their motion to dismiss.

Plaintiff filed a consolidated response to both motions to dismiss arguing that when affording Plaintiff all reasonable inferences, Mortgagee Defendants "are estopped to assert any statute limitations" and that the Mortgagee Defendants "undertook to make representations to [Plaintiff] upon which [Plaintiff] relied to his detriment." According to Plaintiff, the Mortgagee Defendants were engaged in a joint venture and they are each "bound to the acts and omissions of each joint venturer." Plaintiff also stated that this logic

---

[2] During the proceedings, Plaintiff voluntarily nonsuited his claims against Westcor Land Title Insurance Company and Wilson & Associates, PLLC. The United States of America was listed as a party to this action because of their potential interest in the Property due to the 2007 lien.

applies to Mr. Kado as their "successor-in-interest." Plaintiff relied on the doctrine of equitable estoppel and claims that in April 2015, the Mortgagee Defendants had "informed [Plaintiff] that it was accepting payments consistent with an April, 2015 letter from Ocwen," which inferred that Ocwen considered the 2012 foreclosure rescinded. Plaintiff further stated that in September 2016, Plaintiff was further assured by Mortgagee Defendants that the 2012 foreclosure had been rescinded. Plaintiff also responded to Defendants' argument concerning their duty owed to Plaintiff by arguing that even if no contractual duty existed, Mortgagee Defendants had a "duty of candor and good faith" to ensure the affirmative representations to Plaintiff were true.

Mortgagee Defendants, thereafter filed their reply to Plaintiff's response, averring that Plaintiff had not raised any facts that Defendants had misled Plaintiff to prevent him from filing his claim and, even if equitable estoppel was invoked, Plaintiff "must be held to the original six-year limitations period for rescission of the Trustee Deed because any allegation of inducement ended over one year prior to the limitations period expiring."

The Trial Court entered its order on January 27, 2020 and ruled as follows in its entirety: "This cause came on to be heard before this Court upon Defendant's Motion to Dismiss. After argument of respective counsel, and a review of the record, this Court finds the Defendant's Motion to Dismiss shall be GRANTED. Court cost taxed to the Plaintiffs [sic]." Mortgagee Defendants and Saad Kado requested the Trial Court to modify its judgment to correct a clerical mistake. The Trial Court therefore clarified its order by stating that two motions to dismiss were before the court, one from Mortgagee Defendants and another by Saad Kado. The Trial Court, therefore, found that both motions to dismiss were granted and that all of Plaintiff's claims against those defendants were dismissed with prejudice. Plaintiff timely appealed to this Court.

Appellant filed his brief in September 2020, and Mortgagee Defendants and Saad Kado (collectively, "Defendants") filed their respective briefs in October 2020. After the remaining appellees did not file appellate briefs, this Court entered an order requiring the defendants, Nationwide Trustee Services, Inc. and the United States of America, to file a brief within ten days or to show cause why the appeal should not be submitted for decision on the record and the briefs already filed. The defendant, the United States of America, filed a notice that it did not intend to file a brief during this appeal. The defendant, Nationwide Trustee Services, Inc., did not respond to this Court's show cause order and did not file an appellate brief in this matter.

## Discussion

Although not stated exactly as such, Plaintiff raises the following issue for our review on appeal: whether the Trial Court erred by granting the motions to dismiss filed by Mortgagee Defendants and Saad Kado. As our Supreme Court has instructed:

A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *cf. Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). The motion requires the court to review the complaint alone. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), or when the complaint is totally lacking in clarity and specificity, *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (*citing Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700. Accordingly, in reviewing a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6), we must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 894; *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d at 426; Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5-6(g), at 5-111 (3d ed. 2009). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo without a presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 895; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 472 (Tenn. 2012).

Plaintiff's sole issue on appeal is whether the Trial Court erred by dismissing Plaintiff's action upon its grant of Defendants' Tennessee Rule of Civil Procedure 12.02(6) motions to dismiss. We start our review faced with an initial problem. The Trial Court's judgment is unclear as to the Trial Court's reasoning or basis for its decision to grant Defendants' motions and to dismiss with prejudice Plaintiff's action. In its judgment, the Trial Court states only that "[b]ased upon the argument of counsel and review of the record," the Defendants' motions to dismiss are well taken and granted. The Trial Court's judgment starts and ends solely with its ultimate conclusion to grant the motions. The Trial Court provided no reasoning to explain how or why it came to its decision. Although we acknowledge that a trial court is not required to enter findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01 when ruling on a motion to

dismiss, a trial court's failure to provide any legal basis for its dismissal of a Rule 12.02 motion to dismiss can hamper this Court's ability to review the dismissal on appeal. *See Buckingham v. Tennessee Dep't of Corr.*, No. E2020-01541-COA-R3-CV, 2021 WL 2156445, at *3 (Tenn. Ct. App. May 27, 2021) ("[A]ppellate review is hampered because the trial court's order does not apply any legal standard or contain legal conclusions regarding the sufficiency of the complaint or provide any reasoning for the dismissal."). This Court has previously vacated a trial court's judgment of dismissal based on Tennessee Rule of Civil Procedure 12.02 when it failed to provide a sufficient explanation for the dismissal. *See Buckingham*, 2021 WL 2156445, at *3; *Huggins v. McKee*, No. E2014-00726-COA-R3-CV, 2015 WL 866437, at *5 (Tenn. Ct. App. Feb. 27, 2015).

Nevertheless, we will attempt to discern the Trial Court's reasoning for granting Defendants' Rule 12.02 motions to dismiss. Due to the Trial Court's bare-bones order, the record before us, and the statements of counsel during oral argument, we can only infer that the Trial Court's reasoning for granting Defendants' motions to dismiss was based on the action being untimely due to a violation of the statute of limitations. The primary arguments in Defendants' motions to dismiss were that Plaintiff's action was untimely and an additional argument that concerned only the negligence claim. Since the Trial Court dismissed all of Plaintiff's claims against Defendants, this could only be accomplished based on Defendants' argument that the claims violated the statute of limitations. Therefore, we will address the Trial Court's decision to grant the motions to dismiss on its apparent reasoning that Plaintiff's claims violated the statute of limitations.[3]

Defendants argue that Plaintiff's action violates the three-year statute of limitations of claims for injuries to real property, pursuant to Tennessee Code Annotated § 28-3-105(1), and the six-year statute of limitations for actions to invalidate instruments and to quiet title, pursuant to Tennessee Code Annotated § 28-3-109(a)(3). Plaintiff, however, argues that his action was timely due to equitable estoppel. Concerning equitable estoppel for purposes of the statute of limitations, our Supreme Court stated in *Redwing v. Catholic Bishop for Diocese of Memphis* as follows:

> The doctrine of equitable estoppel arises from the equitable maxim that no person may take advantage of his or her own wrong. In the context of a defense predicated on a statute of limitations, the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period. *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d [141,] 145 [(Tenn. 2001)]; *Ingram v. Earthman,* 993 S.W.2d 611, 633 (Tenn. Ct. App. 1998). When the

---

[3] Both Plaintiff and Defendants include arguments concerning matters other than the statute of limitations. We decline to address those arguments upon our conclusion that, the best we can tell, the Trial Court's reasoning for dismissing the action was based on all of Plaintiff's claims being untimely.

doctrine of equitable estoppel is applicable, it prevents a defendant from asserting what could be an otherwise valid statute of limitations defense. *Hardcastle v. Harris,* 170 S.W.3d 67, 84 (Tenn. Ct. App. 2004).

The party invoking the doctrine of equitable estoppel has the burden of proof. *Hardcastle v. Harris,* 170 S.W.3d at 85. Thus, whenever a defendant has made out a prima facie statute of limitations defense, the plaintiff must demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit. *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 145; *Hardcastle v. Harris,* 170 S.W.3d at 85. The plaintiff "must also demonstrate that [his or her] delay in filing suit was not attributable to [his or her] own lack of diligence." *Hardcastle v. Harris,* 170 S.W.3d at 85.

The doctrine of equitable estoppel applies only when the defendant engages in misconduct. *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon,* 318 S.W.3d at 849 (quoting *Norton v. Everhart,* 895 S.W.2d at 321). . . .

In the context of defenses predicated on a statute of limitations, the doctrine of equitable estoppel always involves allegations that the defendant misled the plaintiff. *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 146. The focus of an equitable estoppel inquiry "is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct." *Hardcastle v. Harris,* 170 S.W.3d at 85; *see also Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 146. Determining whether to invoke the doctrine of equitable estoppel to counter a statute of limitations defense requires the courts to examine the facts and circumstances of the case to determine whether the defendant's conduct is sufficiently unfair or misleading to outweigh the public policy favoring the enforcement of statutes of limitations. *Hardcastle v. Harris,* 170 S.W.3d at 85.

Plaintiffs asserting equitable estoppel must have acted diligently in pursuing their claims both before and after the defendant induced them to refrain from filing suit. The statute of limitations is tolled for the period during which the defendant misled the plaintiff. *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 146; *Lusk v. Consolidated Aluminum Corp.,* 655 S.W.2d 917, 920-21 (Tenn. 1983). The plaintiff must demonstrate that suit was timely filed after the plaintiff knew or, in the exercise of reasonable diligence, should have known that the conduct giving rise to the equitable estoppel

claim had ceased to be operational.  *See Ingram v. Earthman,* 993 S.W.2d at 633.  At the point when the plaintiff knows or should know that the defendant has misled him or her, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period.  *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 146.

*Redwing v. Catholic Bishop for Diocese of Memphis,* 363 S.W.3d 436, 460-61 (Tenn. 2012) (footnotes omitted).

With Rule 12.02(6) motions to dismiss, we must construe the facts alleged in the complaint as true.  In his complaint, Plaintiff pled sufficient facts to support his claim that his action was timely due to equitable estoppel.  Another earlier foreclosure sale on this Property had occurred in 2009 and had been rescinded to "allow for a loss mitigation review."  The foreclosure sale at issue in this case occurred in November 2012.  Prior to the sale, Plaintiff had been working with Homeward on negotiating a loan modification.  An agreement had been reached concerning a modification in 2009 between Plaintiff and Homeward.   Plaintiff began making payments per the new loan modification agreement.  However, Homeward unilaterally reversed the loan modification due to a miscalculation by Homeward "by not including the 2009 foreclosure attorney's fees and costs."  Homeward informed Plaintiff of the reversal of the loan modification in March 2010 and formulated a replacement loan modification in 2011, which included the costs and fees from the 2009 foreclosure.  Plaintiff disagreed with the foreclosure expenses and was under the reasonable impression that the loan had already been modified in 2009, as Plaintiff had been making payments on the loan modification.

Plaintiff hired an attorney to challenge the foreclosure and had successfully stopped the foreclosure at that time, which also resulted in the removal of attorney's fees and costs from the account.  An email sent by a representative of Homeward, Nena Kamman, acknowledged that Homeward had "dropped the ball" in its negotiations with Plaintiff concerning loan modifications.  Ms. Kamman stated that her supervisor at Homeward had instructed her to review Plaintiff's account again for a loan modification in order to prevent litigation and that Plaintiff was sending documentation to them for review.  However, the foreclosure sale occurred in November 2012 before Plaintiff's application was completed.

Defendant argues that Plaintiff was aware of the alleged errors with the 2012 foreclosure sale at least in April 2013 after receiving an email from the Homeward representative.  However, in October 2013, Ms. Kamman, who now worked for Ocwen, the new loan servicer, sent a letter to the Tennessee Attorney General's Office stating that Plaintiff had requested rescission of the foreclosure sale, that Ocwen was willing to provide Plaintiff with another opportunity to qualify for a loan modification, and that if the loan was approved, Ocwen was willing to rescind the 2012 foreclosure sale.  Ocwen continued negotiating with Plaintiff to reach an agreement concerning a loan modification.  Ocwen

presented Plaintiff with a proposed loan modification agreement, which Plaintiff executed in January 2014 and made payments consistent with that agreement to Ocwen. Plaintiff subsequently received a "Pre-Foreclosure Referral" letter from Ocwen in April 2015, stating that the account may be referred to foreclosure after fourteen days.

Prior to January 2016, Ocwen provided Plaintiff with another loan modification package, which ultimately was not approved. Importantly, Plaintiff alleged that as late as September 2016, he received a letter from a representative of Ocwen Loan Servicing, LLC, confirming to him that the November 2012 foreclosure sale had been rescinded. Despite the assurance made to Plaintiff in September 2016 that the previous foreclosure sale had been rescinded and the continuation of negotiations concerning a loan modification through at least January 2016, Defendants now seek to enforce the foreclosure sale from November 2012 and argue that Plaintiff did not timely file his action to contest that foreclosure. As alleged in the complaint, Mortgagee Defendants did not act toward Plaintiff as though they were enforcing the 2012 foreclosure sale and instead specifically represented to Plaintiff and assured him that the foreclosure sale had been rescinded. The statute of limitations would not have begun to run anew until Plaintiff knew or should have known that he had been misled by Mortgagee Defendants. *See Redwing*, 363 S.W.3d at 461. Plaintiff filed this action in June 2019, which is within three and six years from the September 2016 letter to Plaintiff informing him of the rescission of the foreclosure sale.

Defendants argue that Plaintiff had not sufficiently pled equitable estoppel in his complaint. We, however, disagree. When taking the facts in the complaint as true for purposes of the Tennessee Rule of Civil Procedure 12.02(6) motions to dismiss, this conduct by Mortgagee Defendants supports a claim that Mortgagee Defendants misled Plaintiff to prevent Plaintiff from filing suit against them and that Mortgagee Defendants should have known that their actions would induce Plaintiff to delay filing suit in this case. Based on the alleged actions by Mortgagee Defendants of continued negotiations regarding loan modifications and their assurance that the foreclosure sale had been rescinded, it was reasonable for Plaintiff to rely on Defendants' conduct when delaying the filing of his action against them. There is nothing in the complaint that shows that the delay in filing the action was due to a lack of diligence by Plaintiff because the action would have been unnecessary if the foreclosure sale actually had been rescinded as Mortgagee Defendants had represented to Plaintiff.

Construing the facts in the complaint as true, which we must at this motion to dismiss stage, we conclude that Plaintiff presented sufficient facts to support a claim that Defendants are equitably estopped from relying on a statute of limitations defense. We find and hold that the Trial Court erred by dismissing Plaintiff's action. Based on this holding, it is unnecessary for us to consider Plaintiff's argument that no statute of limitations would apply to a quiet title action because we find that even if the statute of

limitations applied, Plaintiff sufficiently pled equitable estoppel, which would defeat Defendants' motions to dismiss.

## **Conclusion**

Based on the foregoing, we reverse the Trial Court's grant of Defendants' motions to dismiss. This cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs incurred on appeal are assessed against the appellees, Saad Kado; Wells Fargo Bank, N.A., as trustee for the benefit of Option One Mortgage Loan Trust 2005-3 Asset Backed Certificates, Series 2005-3; PHH Mortgage Corporation; and Sand Canyon Corporation.

_____
D. MICHAEL SWINEY, CHIEF JUDGE